UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES & EXCHANGE COMMISSION, | ) 5:10CV1235 |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) JUDGE CHRISTOPHER BOYKO |
| v. | ) (Mag. Judge McHargh) |
| | ) |
| GREGORY GESWEIN, et al., | ) |
| | ) |
| Defendants. | ) REPORT AND |
| | ) <u>RECOMMENDATION</u> |

McHARGH, MAG. J.

The plaintiff United States Securities and Exchange Commission ("SEC") has

filed an amended complaint[1] against defendants Gregory Geswein ("Geswein"),

Kevin Krakora ("Krakora"), and Sandra Miller ("Miller").  (Doc. 4.)  The complaint

identifies Miller as Diebold's former Director of Corporate Accounting.  (Doc. 4, at ¶

1.)  Currently before the court is defendant Miller's motion to dismiss the amended

complaint, for failure to state a claim, and for failure to comply with Rule 9(b).

(Doc. 15.)

The complaint alleges eight counts against the defendants.  The complaint

contains many diverse allegations, but generally speaking, the complaint alleges

---

[1]  As the amended complaint (doc. 4) is now the operative complaint, the court
will often simply refer to "the complaint," rather than, "the amended complaint."  No
reference is intended to the original complaint, unless it is cited specifically as "doc.
1."

that the defendants used improper, and in many instances, fraudulent accounting

practices during the period of 2002 to 2007.  These improper accounting practices

significantly inflated the company's reported earnings, allegedly, as provided in its

periodic filings and information disseminated to investors.  See generally doc. 4,

Am.Compl., at ¶¶ 1-111.  The fourth, fifth, and eighth counts are against

defendants Geswein and Krakora only.

The first count alleges violations of the Securities Act, Section 17(a), 15

U.S.C. § 77q(a).  (Doc. 4, at ¶¶ 112-114.)  The second count alleges violations of the

Exchange Act, Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. §

240.10b-5.  Id. at ¶¶ 115-117.  The third count alleges violations of the Exchange

Act, Section 13(b)(5), 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-

1.  Id. at ¶¶ 118-121.  These three claims concern all three defendants.

The sixth count alleges that the three defendants aided and abetted Diebold's

violations of the Exchange Act, Section 13(a), 15 U.S.C. § 78m(a), and Rules 12b-20,

13a-1, 13a-11, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and

240.1313a-13.  (Doc. 4, at ¶¶ 129-132.)  The seventh count alleges that the

defendants aided and abetted Diebold's violations of the Exchange Act, Sections

13(b)(2)(A), and 13(b)(2)(B), 15 U.S.C. §§ 78m(b)(2)(A), and 78m(b)(2)(B).  Id. at ¶¶

133-136.

The SEC seeks the following relief, as to Miller:

(a) Permanently enjoining each defendant from violating, directly or
indirectly, Securities Act Section 17(a), Exchange Act Sections 10(b)

and 13(b)(5) and Exchange Act Rules 10b-5 and 13b2-1 and from
aiding and abetting violations of Exchange Act Sections 13(a),
13(b)(2)(A), and 13(b)(2)(B) and Exchange Act Rules 12b-20, 13a-1,
13a-11, and 13a-13;

* * * * *

(c) Ordering each defendant to disgorge ill-gotten gains, with
prejudgment interest, including, but not limited to, salaries, bonuses,
and other benefits wrongfully obtained as a result of their fraudulent
conduct;

(d) Imposing civil monetary penalties against each defendant pursuant
to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act
Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

* * * * *

(g) Granting such other and further relief as the Court deems just and
appropriate.

(Doc. 4, at 39.)

Defendant Krakora has filed a motion to dismiss the amended complaint.

(Doc. 16.)  Defendant Geswein has also filed a motion to dismiss the amended

complaint.  (Doc. 17.)  These motions have been addressed in a separate Report and

Recommendation.

Finally, defendant Miller filed a motion to dismiss the amended complaint,

for failure to state a claim under Rule 12(b)(6), and for failure to comply with Rule

9(b).  (Doc. 15.)  Plaintiff SEC has filed a memorandum in opposition (doc. 23), and

Miller has filed a reply brief (doc. 25).

Miller's motion is based on several grounds:  The complaint is barred as untimely by the relevant statute of limitations; the SEC has "failed to allege the occurrence of a securities transaction" sufficient to state a claim; the allegations are not based on the violation of any securities law, but simply alleged violations of GAAP; and, the SEC has failed to adequately plead its claims sounding in fraud, particularly as to scienter.  (Doc. 15, at 1-2, 35.)

## I.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Until fairly recently, the standard for a motion to dismiss for failure to state a claim upon which relief can be granted was that the motion establish, beyond a reasonable doubt, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996).  However, in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), the Supreme Court modified the standard, in particular the "no set of facts" phrase.

The Court's ruling in Twombly abrogated Conley, and moved away from the pure notice pleading standards that had previously been a hallmark of the Civil Rules.  The Twombly Court asserted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

4

action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Twombly, 550 U.S. at 555 (citations omitted). See also Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009); Association of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). The Court protested that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Compare 5 Wright & Miller, Federal Practice and Procedure, § 1216 (2004) ("Conspicuously absent from Federal Rule 8(a)(2) is the requirement found in the [earlier] codes that the pleader set forth the 'facts' constituting a 'cause of action'.") Justice Stevens, in dissent, characterized the decision as a "dramatic departure from settled procedural law." Twombly, 550 U.S. at 573 (Stevens, J, dissenting).

In Ashcroft v. Iqbal, the Court clarified that the new Twombly standard is not intended to be limited to complicated litigation, such as the antitrust conspiracy case in Twombly. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The Court asserted that the new pleading standards governing Rule 8(a) do not require "detailed factual allegations," however they do require "factual enhancement." Iqbal, 129 S.Ct. at 1949. Only "a complaint that states a plausible claim for relief" will survive a motion to dismiss. Id. at 1950.

The Court summarized its new "plausibility" standard as follows:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

5

> plausible on its face."  A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged.  The
> plausibility standard is not akin to a "probability requirement," but it
> asks for more than a sheer possibility that a defendant has acted
> unlawfully.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. 554).  See, e.g., Boykin v.

KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (plausibility standard).  In other words,

when resolving a motion to dismiss, the court is now required to locate the

allegations of the complaint on a possibility – plausibility – probability continuum.

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

The Supreme Court stated that "when a complaint adequately states a claim,

it may not be dismissed based on a district court's assessment that the plaintiff will

fail to find evidentiary support for his allegations or prove his claim to the

satisfaction of the factfinder."  Twombly, 550 U.S. at 563 n.8.  The function of the

court in ruling on such a motion is not to weigh the evidence, nor to appraise the

credibility of witnesses.  Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).  Rather,

the court is simply to determine "whether a complaint states a plausible claim for

relief."  Iqbal, 129 S.Ct. at 1950.

A motion to dismiss for failure to state a claim upon which relief can be

granted is procedural, and tests the sufficiency of the complaint.  Miller, 50 F.3d at

377.  The court must construe the complaint in the light most favorable to the

6

plaintiff, and, for the purposes of this motion, accept all factual allegations as true.
Central States Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252, 255 (6th Cir.
1997).  However, the court is "not bound to accept as true a legal conclusion couched
as a factual allegation."  Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at
555).

### A.  Civil Rule 9(b)

In addition, the defendants seek dismissal of several counts on the basis that
those allegations of the amended complaint sounding in fraud do not satisfy the
requirements of Civil Rule 9(b), namely, that "the circumstances constituting fraud
. . . shall be stated with particularity."  See, e.g., doc. 15, at 28-29.  See generally
Fed. R. Civ. P. 9(b); Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 563 (6th Cir.
2003); American Bonding Co., Inc. v. American Contractors Indem. Co., No.
2:10CV441, 2011 WL 1043946, at *3 (S.D. Ohio Mar. 18, 2011).  Securities fraud
claims, as with any fraud claim, must satisfy the pleading requirements of Rule
9(b).  Konkol v. Diebold, Inc., 590 F.3d 390, 396 (6th Cir. 2009); Frank v. Dana
Corp., 547 F.3d 564, 569-570 (6th Cir. 2008).  The purpose of Rule 9(b)'s
particularity requirement "is to provide a defendant fair notice of the substance of a
plaintiff's claim in order that the defendant may prepare a responsive pleading."
Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988).

To meet the particularity requirements of Rule 9(b), the SEC's complaint
must  "(1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank , 547 F.3d at 570 (quoting Gupta v. Terra Nitrogen Corp., 10 F.Supp.2d 879, 883 (N.D. Ohio 1998); Hartop v. Deutsche Bank Nat. Trust Co., No. 10-10078, 2010 WL 4272601, at *6 (E.D. Mich. Oct. 13, 2010) (quoting Frank); SEC v. Power, 525 F.Supp.2d 415, 422 (S.D. N.Y. 2007). At a minimum, the SEC must allege with particularity the time, place and contents of the fraud or misrepresentations. Frank, 547 F.3d at 570 (citing Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir. 1984)). See also SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (must plead time, place, and content of alleged misrepresentation with specificity).

Thus, where a complaint fails to identify specific statements that are allegedly fraudulent, fails to identify the specific speaker(s), and fails to detail when and where the alleged statements were made, the complaint fails to meet the pleading standards for fraud under Rule 9(b). See, e.g., Gupta, 10 F.Supp.2d at 883. See also Yuhasz, 341 F.3d at 564 (failure to identify specific parties or fraudulent acts requires dismissal); 5 Wright & Miller, Federal Practice and Procedure, § 1297 (particularity required as to time, place and contents of misrepresentations, as well as identity of speaker).

## II.  STATUTE OF LIMITATIONS

Miller contends that the SEC has failed to allege, with any particularity, "any conduct" by her within the statute of limitation.  (Doc. 15, at 12, emphasis added.)  She argues that any of the claims against her predating May 2, 2004, are time-barred under 28 U.S.C. § 2462.  (Doc. 15, at 12-19.)

Claims for civil penalties in an SEC civil enforcement action are governed by Section 2462.  SEC v. Quinlan, No. 08-2619, 2010 WL 1565473, at *6 (6th Cir. Apr. 21, 2010).  The relevant statute reads:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

The SEC filed this action on June 2, 2010.  (Doc. 1.)  All three defendants signed tolling agreements that tolled and suspended the running of the statute of limitations for one year (or, in the case of Miller, thirteen months).  (Doc. 4, at ¶ 108; doc. 15, at 12-13.)  Miller claims that the complaint does not allege any wrongdoing by her after the May 2, 2004, limitations date.  (Doc. 15, at 12-14.)

The SEC responds that the complaint does indeed allege wrongdoing within the relevant period.  (Doc. 23, at 15.)  For example, the SEC points to allegations in the complaint that Miller released improper "cookie jar" reserves "in the third

quarter of 2004." (Doc. 23, at 15, citing doc. 4, at ¶ 79.)  The complaint also alleges that Miller made fraudulent entries to capitalize expenses "in the amounts of $1 million effective September 30, 2004, amounts totaling $1 million effective in the fourth quarter of 2004, and $1.6 million effective March 31, 2005." (Doc. 4, at ¶ 89.)

The court finds that the complaint alleges wrongdoing within the limitations period.  The complaint should not be dismissed on this basis as untimely.  Whether these allegations meet the particularity requirements of Rule 9(b) is another issue, which will be addressed below.

### A.  Running of Statute of Limitations Not Triggered by Discovery Rule

The SEC contends that, under the "discovery rule," the limitations period does not begin until a reasonably diligent plaintiff would have discovered the facts constituting the violation.  (Doc. 23, at 16, citing Merck & Co., Inc. v. Reynolds, 130 S.Ct. 1784 (2010).)  The SEC claims that Merck affirmed the application of the discovery rule in securities fraud cases.  (Doc. 23, at 16).  Although Miller does not address this point in her motion to dismiss, her co-defendants have pointed out that the discovery rule is inapplicable under Section 2462, because the claim accrues on the date of the alleged violation.  (Doc. 26, at 15; doc. 27, at 26.)

The court agrees with those courts that have rejected a general "discovery rule," under which the limitations period would not begin until the SEC discovered the facts constituting the violation.  3M Co. v. Browner, 17 F.3d 1453, 1461-1462 (D.C. Cir. 1994); Federal Election Comm'n v. Williams, 104 F.3d 237, 240 (9th Cir.

1996), cert. denied, 522 U.S. 1015 (1997) (distinguishing tolling based on fraudulent concealment).

### B.  Section 2462's Statute of Limitations and Equitable Relief

Miller asserts that equitable tolling does not apply to Section 2462.  (Doc. 15, at 15-16, 20, 23.)  She argues that, because equitable tolling is not a theory "provided by Act of Congress," it is insufficient to toll the limitations period expressed by Section 2462.  Id. at 16.  In support, Miller argues that, applying the reasoning of the Supreme Court in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, a private securities suit, "it is clear that Congress did not intend for equitable tolling to apply to claims governed by § 2462."  (Doc. 15, at 15.)  The Court does not find that Lampf supports such a conclusion.

In Lampf, the Supreme Court "determine[d] which statute of limitations is applicable to a private suit brought pursuant to § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. § 78j(b), and to Securities and Exchange Commission Rule 10b-5, 17 CFR § 240.10b-5."  Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 352 (1991).  The Court agreed with the plaintiffs that "[t]ime requirements in law-suits . . . are customarily subject to 'equitable tolling.' "  Lampf, 501 U.S. at 363 (quoting Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990)).  The Court noted, generally, that tolling was justified, in part, because "the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part."  Id.  However, the

11

Court found "it is evident that the equitable tolling doctrine is fundamentally inconsistent" with the statute of limitations which the Court found applied in private securities actions.  Id.  For example, the Court found that the limitations period at issue "by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary."  Id.  Lampf is inapposite in this SEC enforcement action.

Miller also contends that the five-year limitations period should apply to the entire action.  (Doc. 25, at 7-8.)  The plain wording of Section 2462 would appear to support an argument that the limitations period should pertain to an entire "action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise," not merely to certain claims for relief within such an action or proceeding.  See generally 28 U.S.C. § 2462.  In addition, it would appear from the plain language of the statute that any type of equitable tolling, and similar doctrines which may be applied to toll or extend the statute of limitations, would not apply unless specifically authorized by Congress.  See 28 U.S.C. § 2462 ("Except as otherwise provided by Act of Congress ...").  However, this is not a case of first impression, and federal courts have applied a more expansive reading of the statute.

The Sixth Circuit has found that "claims for civil penalties in a civil enforcement action brought by the SEC have been recognized as being governed by § 2462."  Quinlan, 2010 WL 1565473, at *6.  See also Zacharias v. SEC, 569 F.3d

12

458, 471 (D.C. Cir. 2009) (may not impose civil penalties in enforcement action initiated more than five years after offender committed illegal act).  The Quinlan court recognized that whether equitable remedies, such as "orders of disgorgement, injunctions against future violations, or imposition of an officer and director bar," are subject to the statute of limitations in Section 2462 is an unsettled question. Quinlan, 2010 WL 1565473, at *6.

The district court in Quinlan undertook a "fact-intensive inquiry," based on related criminal proceedings, to determine whether the equitable remedies sought in that case were remedial or punitive.  Quinlan, 2010 WL 1565473, at *6.  Such an inquiry is clearly inappropriate on a motion to dismiss, which merely assesses the sufficiency of the pleadings.  However, the court of appeals did affirm the district court's finding that, because the equitable relief was remedial, rather than punitive, the equitable relief was thus not a "penalty" subject to Section 2462's five-year statute of limitations.  Id. at *7.  Thus, the Sixth Circuit has agreed that equitable relief is not necessarily subject to the statute of limitations.

The Southern District of New York provided a useful summary of the issue in SEC v. Jones:

> While § 2462 applies to SEC actions seeking civil penalties, some courts have found that Commission suits for equitable and remedial relief "are not governed by § 2462 because they are not actions or proceedings for a 'penalty' within the meaning of the statute."  Most of these courts have determined that § 2462 does not apply to equitable relief that seeks to undo prior damage or protect the public from future harm.

In Johnson v. SEC, 87 F.3d 484, 486-92 (D.C. Cir. 1996), the D.C. Circuit Court of Appeals answered the question of whether § 2462 should apply to equitable relief that does not seek to undo damage or prevent future harm to the public.  It held that where equitable relief acts as a penalty – not a remedial measure – the five-year limitations period in § 2462 applies.  The court distinguished the remedies thus: a remedial measure restores the wronged party to its status quo ante, correcting or undoing the effects of a particular wrong, whereas a penalty is "a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's actions."

Johnson further held that an equitable remedy, such as an injunction, which is primarily aimed at preventing future harm to the public, rather than at punishing a particular defendant, may be characterized as remedial though it is not directly tied to restoring the status quo ante.

In light of the relevant case law, the ordinary meaning of "penalty," and the clear language of § 2462, the Court holds that the limitations period in § 2462 applies to civil penalties and equitable relief that seeks to punish, but does not apply to equitable relief which seeks to remedy a past wrong or protect the public from future harm.

SEC v. Jones, 476 F.Supp.2d 374, 380-381 (S.D.N.Y. 2007) (internal citations omitted).  The court finds the reasoning in Jones persuasive.

Therefore, generally, "Section 2462's statute of limitations applies to the SEC's request for civil penalties but not to its request for permanent injunctive relief [or] disgorgement."  SEC v. Gabelli, No. 08CV3868, 2010 WL 1253603, at *5 (S.D.N.Y. Mar. 17, 2010) (quoting SEC v. Kelly, 663 F.Supp.2d 276, 287 (S.D.N.Y. 2009)).  For example, federal courts have found that "Section 2462 does not preclude disgorgement actions brought by the SEC where the claim seeks to 'deprive one of wrongfully obtained proceeds.'"  SEC v. DiBella, 409 F.Supp.2d 122, 127 (D. Conn.

2006) (quoting SEC v. Lorin, 869 F.Supp. 1117, 1122 (S.D.N.Y. 1994)). See also

Power, 525 F.Supp.2d at 426 (disgorgement is equitable remedy to which SOL does

not apply). As to the injunctive relief sought, "whether a permanent injunction

constitutes a 'penalty' under Section 2462 depends on the likelihood of recurrence."

Power, 525 F.Supp.2d at 427. The mere fact that defendants may suffer some loss

is not sufficient to render a sanction punitive. Zacharias, 569 F.3d at 471.

Thus, to the extent that the SEC seeks to enjoin the defendants from

violating or aiding and abetting the violation of the securities laws, or an order

directing the defendants to disgorge profits, in order to remedy an alleged past

wrong and protect the public from future harm, the five-year statute of limitations

of Section 2462 does not apply. However, the SEC also seeks the imposition of civil

monetary penalties (doc. 4, at 39), which are subject to Section 2462, and which will

be addressed below.

### C.  Fraudulent Concealment

The SEC alleges that the defendants "fraudulently concealed their wrongful

conduct through a number of steps which helped prevent their conduct from being

discovered by the Commission." (Doc. 4, at ¶ 106.)

Miller argues that Section 2462 is not subject to equitable extensions, such as

fraudulent concealment. Where the doctrine does apply, Miller contends that

tolling is limited to the period of time in which the defendant was alleged to have

actively concealed the fraud. She contends that mere inaction or silence is

insufficient.  (Doc. 15, at 16.)  Even if Sect. 2462 were subject to equitable tolling,
she contends that the SEC has not pleaded fraudulent concealment with the
requisite particularity.  (Doc. 15, at 19.)

Federal courts have found that the five-year statute of limitations in Section
2462 can be tolled by the fraudulent concealment doctrine.  F.E.C. v. Williams, 104
F.3d at 240 (citing United States v. Core Lab.s, Inc., 759 F.2d 480, 484 (5th Cir.
1985); and United States v. Firestone Tire & Rubber Co., 518 F.Supp. 1021, 1036
(N.D. Ohio 1981)); Power, 525 F.Supp.2d at 424; Jones, 476 F.Supp.2d at 381-382.
See generally Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946).

Regarding the doctrine of fraudulent concealment, the Sixth Circuit has
found that:

> In order to establish equitable tolling by fraudulent concealment,
> plaintiffs must allege and establish that:  1) defendants concealed the
> conduct that constitutes the cause of action; 2) defendants'
> concealment prevented plaintiffs from discovering the cause of action
> within the limitation period; and 3) until discovery of the cause of
> action, plaintiffs exercised due diligence in trying to find out about the
> cause of action.

Whittiker v. Deutsche Bank Nat. Trust Co., 605 F.Supp.2d 914, 927 (N.D. Ohio
2009) (citing Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1465
(6th Cir.), cert. denied, 488 U.S. 880 (1988)); see also Egerer v. Woodland Realty,
Inc., 556 F.3d 415, 422 (6th Cir. 2009) (citing Pinney Dock); Power, 525 F.Supp.2d
at 424; Somin v. Total Community Mgmt. Corp., 494 F.Supp.2d 153, 158-159 (E.D.
N.Y. 2007).

The Supreme Court has recognized the importance of statutes of limitation, ruling that:

> . . . the plaintiff who invokes the doctrine of fraudulent concealment will be "held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.'"

Pinney Dock, 838 F.2d at 1465 (quoting Wood v. Carpenter, 101 U.S. (11 Otto) 135, 139-40 (1879) (internal citation omitted)); see also Yuhasz, 341 F.3d at 563 (circumstances constituting fraud must be stated with particularity).  "Conclusory allegations of fraudulent concealment are not sufficient to withstand a motion to dismiss." Moll v. U.S. Life Title Ins. Co. of New York, 700 F.Supp. 1284, 1289 (S.D. N.Y. 1988).  In accordance with Rule 9(b), plaintiffs must plead with particularity any fraudulent conduct which would justify equitable tolling on that basis.  Id.

Miller contends that the SEC has not alleged any affirmative act on her part to actively conceal the fraud, but simply alleges that she failed to disclose the actions of her superiors.  (Doc. 15, at 16-17.)  In addition, Miller asserts that the SEC does not plead the date on which it learned of the alleged violations.  Id. at 17.

## 1.  Active Concealment

The SEC responds that the complaint "quite clearly alleges not just silence on Miller's part, but silence in the face of direct, pointed questions" about her knowledge of the alleged misconduct at issue.  (Doc. 23, at 21-22.)  The SEC points to Paragraphs 106(c) and (d) of the complaint in support.

17

The first alleges that Miller (and her co-defendants), beginning in mid-2004, "each responded to a checklist that required them to disclose information about Diebold's accounting practices during that quarter."  (Doc. 4, ¶ 106(c).)  The complaint further alleges:

> In each such quarterly response, Defendants were required to disclose whether they were aware of, among other things, fraud, material transactions that had not been properly recorded, any instances in which accounting policies within their areas of responsibility and control properly failed to represent the true nature of the specific accounting transactions of which they were aware, and any instances in which revenues recorded in that quarter were not from inventory sold or other services provided before the last day of the quarter. In their responses to those quarterly checklists for the second quarter of 2004 through at least the fourth quarter of 2006 (or, with regard to Geswein and Miller, until they were no longer employed at Diebold), Defendants failed to timely disclose the fraudulent activities that are described above and of which they were aware. Defendants thus concealed such wrongdoing.

(Doc. 4, ¶ 106(c).)

The complaint thus alleges a failure to disclose in "each" quarterly response. Although the specific dates are not given for the "responses to those quarterly checklists for the second quarter of 2004 through at least the fourth quarter of 2006," these are specific items of which the defendants should have knowledge, or at least which they can determine easily.  The allegations of Paragraph 106(c)  are specific enough to give fair notice of the substance of the claim, so that the defendants should be able to prepare a response.  The complaint should not be dismissed on this basis.

18

The second allegation is somewhat similar, but less specific. While Paragraph 106(c) alleges that Miller responded to "a" specific checklist used by Diebold officials for the specific purpose for certifying Diebold's financial reports as required by Section 302 of Sarbanes-Oxley, Paragraph 106(d) alleges that more vaguely that:

> Miller gave Diebold's auditors oral and/or written responses to questions including but not limited to questions that in substance asked about whether there had been significant accounting or financial changes or events, unusual journal entries, or fraud. In her responses, Miller failed to timely disclose the fraudulent activities described above and of which she was aware, thus concealing such wrongdoing.

(Doc. 4, ¶ 106(d).) Rather than responses to a specific checklist, these allegations refer more broadly to "oral and/or written responses to questions including but not limited to questions" concerning alleged misconduct. In the court's view, these allegations cross the line, and leave the territory of distinct averments of "circumstances constituting fraud" which are "stated with particularity."

Miller also contends that mere inaction or silence is insufficient to plead fraudulent concealment. (Doc. 15, at 16.) In most instances, this is true. However, fraudulent concealment is alleged properly where there is "a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact." Micrel, Inc. v. TRW, Inc., 486 F.3d 866, 874 (6th Cir. 2007); see also Scotts Co. v. Central Garden & Pet Co., 403 F.3d 781, 789 (6th Cir. 2005) (fraudulent concealment involving nondisclosure lies where there is duty to disclose); Chou v. University of Chicago, 254 F.3d 1347, 1361 (Fed. Cir. 2001); Rutledge v. Boston Woven Hose &

19

Rubber Co., 576 F.2d 248, 250 (9th Cir. 1978).  The complaint alleges that the defendants were required to disclose whether they were aware of fraud, or material transactions that had not been properly recorded, etc., and that they failed to timely disclose the fraudulent activities alleged.  (Doc. 4, ¶ 106(c).)  The complaint should not be dismissed on this basis.

### 2.  Date of Discovery of Concealment

The second element of fraudulent concealment which must be alleged is that "defendants' concealment prevented plaintiffs from discovering the cause of action within the limitation period."  Pinney Dock, 838 F.2d at 1465;  Whittiker, 605 F.Supp.2d at 927.  In particular, there must be "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered."  Pinney Dock, 838 F.2d at 1465 (quoting Wood, 101 U.S. at 139-40).

Miller points out that the SEC should have been aware of the facts underlying its suit as early as late 2005, because of private litigation based on the same allegations, which was filed in this court on December 13, 2005.  (Doc. 15, at 17, citing In re Diebold Securities Litig., No. 5:05CV2873 (N.D. Ohio Dec. 13, 2005).)  She also claims that the SEC informed Diebold in 2006 that it had begun an inquiry into Diebold's revenue recognition policy.  Id.  Of course, that does not establish when the SEC learned of the facts of the alleged fraudulent concealment, but that is not defendants' burden.  The complaint itself should have "distinct

20

averments" as to when the fraudulent concealment was discovered.  Pinney Dock,
838 F.2d at 1465.

The SEC points to no allegation in the amended complaint which establishes
when the SEC discovered the facts underlying its claims.  See generally doc. 23, at
21-24.  Therefore, fraudulent concealment has not been sufficiently alleged, and the
SEC cannot rely on it to toll any untimely claims against the defendants.

### D. Summary

Claims for civil penalties in this SEC civil enforcement action are governed
by Section 2462.  Quinlan, 2010 WL 1565473, at *6; Zacharias, 569 F.3d at 471.
However, to the extent that the SEC seeks to enjoin the defendants from violating
or aiding and abetting the violation of the securities laws, or an order directing the
defendants to disgorge profits, in order to remedy an alleged past wrong and protect
the public from future harm, the five-year statute of limitations of Section 2462
does not apply.  See, e.g., Gabelli, 2010 WL 1253603, at *5; Power, 525 F.Supp.2d at
426-427; Jones, 476 F.Supp.2d at 381; DiBella, 409 F.Supp.2d at 127.

Section 2462 ordinarily requires an action to be brought within five years
from the date when the claim "accrued."  Browner, 17 F.3d at 1461-1462.  The court
agrees with those courts that have rejected a general "discovery rule," under which
the limitations period would not begin until the SEC discovered the facts
constituting the violation.  Browner, 17 F.3d at 1462; Williams, 104 F.3d at 240
(distinguishing tolling based on fraudulent concealment).

Federal courts have found that the five-year statute of limitations can be tolled by the fraudulent concealment doctrine. Williams, 104 F.3d at 240; Power, 525 F.Supp.2d at 424; Jones, 476 F.Supp.2d at 381-382. See generally Holmberg, 327 U.S. at 397. In order to plead fraudulent concealment, the SEC must allege that: 1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented the SEC from discovering the cause of action within the limitation period; and 3) until discovery of the cause of action, the SEC exercised due diligence in trying to find out about the cause of action. Egerer, 556 F.3d at 422; Pinney Dock, 838 F.2d at 1465; Power, 525 F.Supp.2d at 424. A party invoking the doctrine of fraudulent concealment is held to stringent rules of pleading, and there must be "distinct averments" in the complaint as to the time when the concealment was discovered. Pinney Dock, 838 F.2d at 1465 (quoting Wood, 101 U.S. at139-140); see also Yuhasz, 341 F.3d at 563.

The SEC points to no allegation in the amended complaint which establishes when the SEC discovered the facts underlying its claims, and therefore the SEC cannot rely on the doctrine of fraudulent concealment to toll any untimely claims against the defendants.

## III. GAAP VIOLATIONS

Many of the SEC's claims are based on alleged violations of Generally Accepted Accounting Principles[2] ("GAAP").  See, e.g., doc. 4, at ¶¶ 19, 40, 43, 47.  The failure to follow GAAP is, by itself, insufficient to state a securities fraud claim.  Konkol, 590 F.3d at 400 (quoting In re Comshare Inc. Securities Litig., 183 F.3d 542, 553 (6th Cir. 1999)); Zaluski v. United Am. Healthcare Corp., 527 F.3d 564, 576 (6th Cir. 2008).  "Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."  Chill v. General Elec. Co., 101 F.3d 263, 270 (2d Cir. 1996).

Miller contends that the complaint only alleges that "she had a general knowledge of Diebold's failure to comply with GAAP."  (Doc. 15, at 27.)  She points out that a violation of GAAP, standing alone, is not fraud.  Rather, there must be evidence of fraudulent intent.  Id. (citing cases).  Miller argues that the complaint "alleges no facts to support any sort of fraudulent intent" on her part.  Id. at 28.  Her arguments will be addressed in the context of the arguments on the individual claims.

---

[2] Generally Accepted Accounting Principles ("GAAP") are the official standards adopted by the American Institute of Certified Public Accountants (the "AICPA"), a private professional organization, through three successor groups it established: the Committee on Accounting Procedure, the Accounting Principles Board (the "APB"), and the Financial Accounting Standard Board (the "FASB").  United States v. Ebbers, 458 F.3d 110, 125 n.2 (2d Cir. 2006) (citing Ganino v. Citizens Utilities Co., 228 F.3d 154, 160 n. 4 (2d Cir. 2000)).

## IV.  ALLEGED VIOLATIONS OF SECURITIES ACT
## AND EXCHANGE ACT

The first count alleges violations of the Securities Act, Section 17(a), 15 U.S.C. § 77q(a), by all defendants.  (Doc. 4, at ¶¶ 112-114.)  The second count alleges violations of the Exchange Act, Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  (Doc. 4, at ¶¶ 115-117.)  The elements which must be established to allege a violation of either are "essentially the same."  SEC. v. Dunn, 587 F.Supp.2d 486, 499 (S.D.N.Y. 2008)

Section 17(a) "is a general prohibition against fraud in the offer or sale of securities," using the instruments of interstate commerce.  Power, 525 F.Supp.2d at 419.  To allege a claim under Sections 17(a), the SEC must allege that the defendants:  "(1) committed a deceptive or manipulative act, or made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device; (2) with scienter; (3) which affected the market for securities or was otherwise in connection with their offer, sale or purchase."  Gabelli, 2010 WL 1253603, at *7 (quoting Power, 525 F.Supp.2d at 419).  See also SEC v George, 426 F.3d 786, 792 (6th Cir. 2005).  Scienter is a necessary element under Section 17(a)(1), but it is not required for liability under §§ 17(a)(2) and 17(a)(3).  SEC v. Kearns, 691 F.Supp.2d 601, 614 (D. N.J. 2010); Power, 525 F.Supp.2d at 419 (citing Aaron v. SEC, 446 U.S. 680, 697 (1980)).

Section 10(b), and Rule 10b-5, prohibit similar conduct in connection with the purchase or sale of a security.  Power, 525 F.Supp.2d at 419.  To state a violation of

either § 10(b) or Rule 10b-5, the SEC must allege that a defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." Dunn, 587 F.Supp.2d at 498-499 (quoting SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999)).  See also George, 426 F.3d at 792; Gabelli, 2010 WL 1253603, at *7; Power, 525 F.Supp.2d at 419.

Section 10(b) "creates civil liability for a wide range of securities fraud."  SEC v. Collins & Aikman, 524 F.Supp.2d 477, 485 (S.D.N.Y. 2007).  The Supreme Court has repeatedly emphasized that Section 10(b) is not to be construed "technically and restrictively, but flexibly to effectuate its remedial purposes."  Id. (quoting In re Parmalat Sec. Litig., 376 F.Supp.2d 472, 501 (S.D. N.Y. 2005).

In sum, then, proof of scienter is a necessary element under Securities Act § 17(a)(1) and Exchange Act § 10(b) and Rule 10b-5, but it is not required for liability under §§ 17(a)(2) and 17(a)(3).  Kearns, 691 F.Supp.2d at 614; Power, 525 F.Supp.2d at 419 (citing Aaron v. SEC, 446 U.S. 680, 697 (1980)).

## A.  Claims as Alleged

The first claim for relief, as stated in the amended complaint, first incorporates Paragraphs 1 through 111 (virtually the entire factual background). (Doc. 4, ¶ 112.)  Then, the complaint alleges that the defendants, "by reason of the conduct described above," violated Securities Act Section 17(a).  Id. at ¶¶ 113-114. The complaint simply paraphrases the statute to allege the violation.  Compare doc.

4, ¶ 113, with 15 U.S.C. § 77q(a).  The first claim for relief does not identify the specific conduct for which any defendant is alleged to be liable, and does not identify a specific violation of a specific provision of Section 17(a).  See generally doc. 4, at ¶¶ 112-114.

The second claim for relief repeats this pattern, incorporating not only the entire factual background, but the first claim for relief as well.  See doc. 4, at ¶¶ 115-117.

In SEC v. Patel, the court confronted a similar situation.  Quoting from its earlier ruling on a motion to dismiss in that case, the court said:

> Given the way the SEC has stated its claims in Counts I and III – incorporating by reference all 187 paragraphs of factual allegations and closely paraphrasing the statutes and rule upon which it relies – it is difficult to determine whether the alleged fraudulent conduct underlying those claims consists of an untrue statement of fact, the omission of a fact necessary to make a prior statement not misleading, or some other manipulative or deceptive act.

SEC v. Patel, Civ.No. 07-CV-39, 2009 WL 2015794, at *1 (D. N.H. July 7, 2009).

The court complained that, even after the complaint was amended, "none of the claims specifically identifies the conduct for which the SEC seeks to hold each defendant liable. "  Id.

The Patel court pointed out that,

> . . . to reasonably determine that any particular claim should not be dismissed would require the court to first comb the complaint in search of factual support for each element of the multiple claims pled as to each defendant, and then evaluate the adequacy of that factual support.  That is, of course, plaintiff's job in the first instance, not the court's.

Patel, 2009 WL 2015794, at *2.

In SEC v. Fraser, the court noted that complaints that rely on "shotgun" pleading (complaints in which every antecedent allegation is incorporated by reference into each subsequent claim for relief), or "puzzle" pleading (which require the defendant and the court to match factual statements to misconduct), do not meet the particularity requirements of Rule 9(b). SEC v. Fraser, No. CV-09-00443, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009). The court noted that such practices result in an improper pleading format for a complex securities action. Id.

The Fraser court noted that the amended complaint before it:

> . . . incorporates every factual paragraph into each claim section, and it makes no attempt to lay out which conduct constitutes the violations alleged. Rather, the claims sections simply paraphrase or quote the language of the statutes and rules, leaving Defendants (and the Court) with the task of combing the Complaint and inferring, rightly or wrongly, what specific conduct the SEC intended to assert as a violation. Given the multiple defendants at issue in each claim, the lack of clarity about which actions apply to each claim, and the general vagueness of the factual allegations, the Complaint does not satisfy Rule 9(b) . . .

Fraser, 2009 WL 2450508, at *14. The court found that the SEC failed to adequately plead the claims at issue, and dismissed those specific claims. Id. at *14, *16.

Some courts have found that a brief in opposition to a motion to dismiss may be used to "clarify" allegations in the complaint "whose meaning is unclear." Gulf Coast Hotel-Motel Ass'n v. Mississippi Gulf Coast Golf Course Ass'n, No. 1:08CV1430, 2010 WL 3168032, at *7 (S.D. Miss. Aug. 10, 2010) (citing Pegram v.

27

Herdrich, 530 U.S. 211, 230 n.10 (2000)); Orton v. Johnny's Lunch Franchise, LLC, No. 10-11013, 2010 WL 2854303, at *3 n.4 (E.D. Mich. July 20, 2010) (citing Pegram).  However, there is a distinction between "clarifying" unclear allegations, and recasting the complaint to cure omissions.  Gulf Coast, 2010 WL 3168032, at *7; Zimmerman v. Logemann, No. 09-cv-210, 2009 WL 4407205, at *5 (W.D. Wis. Nov. 30, 2009).  The SEC cannot amend its Amended Complaint through arguments in its briefs in opposition.  Zimmerman, 2009 WL 4407205, at *5 (citing Bissessur v. Indiana Univ. Bd. of Trustees, 581 F.3d 599, 603 (7th Cir. 2009)); Hurst v. St. George Community Consol. Sch. Dist. No. 258, No. 08-CV-2182,  2009 WL 1363408, at *4 (C.D. Ill. May 13, 2009).  The court will consider the SEC's arguments with that distinction in mind.

### B.  Offer or Sale of Securities

Miller argues that the first count should be dismissed for failure to state a claim, because the SEC has not alleged an offer or sale of any security.  (Doc. 15, at 1, 25-27.)

Many federal courts draw no distinction between the phrase "in the offer or sale" in  Section 17(a), and the "in connection with the purchase or sale" language of Rule 10b-5.  SEC v. Forman, Civ.No. 07-11151, 2010 WL 2367372, at *7 (D. Mass. June 9, 2010).  The SEC points out that courts routinely use the two phrases interchangeably.  (Doc. 21, at 27.)  See e.g., George, 426 F.3d at 791-792; Power, 525 F.Supp.2d at 419.  The Supreme Court has noted that Congress "expressly

28

intended" to define these statutory terms broadly.  United States v. Naftalin, 441 U.S. 768, 773 (1979); see also SEC v. Softpoint, Inc., 958 F.Supp. 846, 862 (S.D.N.Y. 1997) (Sotomayor, J.), aff'd, 159 F.3d 1348 (2d Cir. 1998) (broadly construed to encompass wide range of conduct).  The complaint should not be dismissed on this basis.

The amended complaint alleges that Diebold's common stock is listed on the New York Stock Exchange.  (Doc. 4, at ¶ 10.)  The court takes judicial notice of the fact that a common stock listed on the NYSE is intended, for the most part, to be sold and exchanged.  See generally Silver v. New York Stock Exchange, 373 U.S. 341, 349-350 (1963) (economic role of NYSE).  The complaint also alleges, for example, that Miller made improper accounting entries to improperly enhance Diebold's performance vis-a-vis stock analysts' projections.  (Doc. 4, at ¶¶ 12-13.) Thus, the improper accounting did not merely overstate revenue, as Miller suggests, but allegedly was intended to met stock analysts' projections, which needless to say, have a strong impact on the sale of securities.

## C.  Particularity under Rule 9(b)

Miller argues that even a liberal reading of the complaint "fails to yield any specific facts as to Ms. Miller."  Miller asserts that the complaint simply "describes Ms. Miller as an employee who assisted her superiors in the routine accounting tasks of making journal entries and drafting forms, based on information provided

to her." She claims that the complaint fails to describe "anything resembling a person who acting knowingly as part of an artifice to defraud." (Doc. 15, at 30.)

Miller contends that the allegations that her conduct violated GAAP lack any specificity. The allegation that she assisted in drafting forms for use in bill-and-hold accounting fails to plead any wrongdoing. (Doc. 15, at 30, citing doc. 4, at ¶ 23.) In addition, she is accused of making improper journal entries, without explanation of "what those journal entries reflected or why they were wrong." Id. at 31.

As noted earlier, the SEC's amended complaint is required to meet the particularity requirements of Civil Rule 9(b), that is, it must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank , 547 F.3d at 570; see also Tambone, 597 F.3d at 442; Hartop, 2010 WL 4272601, at *6; Power, 525 F.Supp.2d at 422. Where a complaint fails to identify specific statements that are allegedly fraudulent, fails to identify the specific speaker, or fails to detail when and where the alleged statements were made, the complaint fails to meet the appropriate pleading standards for fraud under Rule 9(b). See Yuhasz, 341 F.3d at 564 (failure to identify specific parties or fraudulent acts requires dismissal); Gupta, 10 F.Supp.2d at 883. Under the post-Twombly standard, a claim will survive a motion to dismiss only if the court finds the claim has "facial plausibility," that is, "when the plaintiff

30

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

### D.  "Scheme Liability"

The SEC responds that Miller attempts to minimize her role at Diebold, but she was a CPA who was Director of Corporate Accounting.  (Doc. 23, at 5.)  The complaint alleges that Miller, along with the other defendants, "was responsible . . . for ensuring that Diebold's revenue recognition policies, including its policies regarding bill-and-hold, complied with GAAP, and for overseeing Diebold's filings with the Commission.  (Doc. 4, at ¶ 54.)  The SEC argues that the complaint "alleges that Miller knew or was reckless in not knowing that the actions she was taking violated GAAP and were improper, and resulted in false and misleading financial reporting."  (Doc. 23, at 5 n.2, citing Compl.)

The SEC argues that, although she did not personally make misrepresentations or omissions to the public about Diebold's revenue or earnings, Miller faces primary liability "because she engaged in a scheme to misrepresent Diebold's financial statements."  (Doc. 23, at 6; see also doc. 33, at 2.)  The SEC points out that the second claim of the complaint is based on Section 10(b) and Rule 10b-5, which make it unlawful to:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Thus, while Rule 10b-5(b) prohibits the making of misrepresentations or omissions, Rule 10b-5(a) bars the employment of "any device, scheme, or artifice to defraud," and Rule 10b-5(c) prohibits acts or practices which would operate as a fraud or deceit.  See, e.g., Benzon v. Morgan Stanley Distrib., Inc., 420 F.3d 598, 610 (6th Cir. 2005) (Rules 10b-5(a) and (c) encompass conduct not restricted to making an untrue statement of material fact).  These latter two provisions are often considered as "scheme liability."  SEC v. Lucent Tech., Inc., 610 F.Supp.2d 342, 350 n.5 (D. N.J. Apr. 27, 2009); see also SEC v. Battenberg, No. 06-14891, 2010 WL 1416981, at *3 (E.D. Mich. Apr. 8, 2010).

To state a claim based on conduct violating Rule 10b-5(a) and (c), the SEC must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter.  See, e.g., In re Alstom SA, 406 F.Supp.2d 433, 474 (S.D. N.Y. 2005); see also SEC v. Conaway, 698 F.Supp.2d 771, 869 (E.D. Mich. 2010).  Unlike a private litigant, the SEC does not need to prove reliance.  Lucent, 610 F.Supp.2d at 350.  As noted earlier, the statute "creates civil liability for a wide range of securities fraud," and is to be construed flexibly.  Collins & Aikman, 524 F.Supp.2d at 485; see also Alstom, 406 F.Supp.2d at 474 n.37 (wide range of activities).  The Supreme Court has noted that conduct

itself can be deceptive. Lucent, 610 F.Supp.2d at 358 (citing Stoneridge Investment Partners, LLC., v. Scientific-Atlanta, Inc., 552 U.S. 148, 158 (2008)); see also Battenberg, 2010 WL 1416981, at *4 (citing SEC v. Zandford, 535 U.S. 813, 821-822 (2002)).

Miller argues that the alleged deceptive scheme or course of conduct must go beyond the same misstatements that would form the basis of a misrepresentation claim under Rule 10b-5(b). (Doc. 25, at 5, citing Lucent, 610 F.Supp.2d at 359.) This is an issue about which the law is less than clear.[3] In Alstom, the court stated that:

> . . . a plaintiff may not seek to hold a defendant liable for misleading statements under subsections (a) and (c) by alleging that the defendant is liable for the misleading statements [simply] because he or she was a participant in a scheme through which the statements were made.

Alstom, 406 F.Supp.2d at 475. However, the court went on to state that

> . . . even if a defendant who did not make any statements in connection with a particular fraud may not be held liable for fraudulent misrepresentations under subsection (b), that defendant may still be held liable under subsections (a) and (c) if it is alleged that they participated in scheme that encompassed conduct beyond misrepresentations.

---

[3] In a supplement to her motion, Miller argues that a recent Supreme Court case, Janus Capital Group, Inc. v. First Derivative Traders, dictates that the Rule 10b-5(b) claims against her should be dismissed because the SEC concedes that Miller did not actually make any false statement. See generally doc. 32. However, as pointed out by the SEC (doc. 33, at 2), Janus was concerned with liability for making false statements under Rule 10b-5(b), not conduct under Rule 10b-5(a) and Rule 10b-5(c), which the SEC alleges here. See generally Janus Capital Group, Inc. v. First Derivative Traders, 131 S.Ct. 2296, 2299, 2301 (2011) (quoting Rule 10b-5(b)). The Janus case does not provide any clarity on the latter two provisions.

Alstom, 406 F.Supp.2d at 475.

In Collins & Aikman, on the other hand, the court addressed the issue thus:

> What, then, does it mean to "participate" in a fraudulent scheme?  A person who participates in such a scheme by performing purely administrative duties without knowledge of the purpose of the scheme has not employed a manipulative or deceptive device and so has not incurred liability under section 10(b).  Similarly, a person who participates in a conspiracy to commit a securities law violation but takes no concrete steps in furtherance of the violation has not run afoul of the statute.  By contrast, a person who, in concert with others, participates in a securities fraud scheme by making false statements does incur liability under section 10(b).
>
> Participation in a scheme can thus be sufficient for liability under section 10(b) only if that participation took the form of actions or statements that were independently deceptive or fraudulent.  Where a person is alleged to have participated in a scheme to violate securities laws, it is necessary to examine closely the extent of the alleged participation to determine whether the person is accused of an actual misrepresentation or the employment of a fraudulent device.  In the absence of such an accusation, a claim based on mere "participation" is legally insufficient.

Collins & Aikman, 524 F.Supp.2d at 486 (footnotes omitted).

In Lucent, the court found that, "while a defendant who has not made the fraudulent statements cannot be held liable for the statements, that same defendant may be held liable for the fraudulent scheme behind the misstatements."

Lucent, 610 F.Supp.2d at 360.  The court found that "the conduct at issue must involve 'sham' or 'inherently deceptive' transactions to sustain a claim under Rule 10b-5(a) or (c)."  Id.  In other words, subsections (a) and (c) may only be used to state a claim against a defendant for the underlying devices or frauds themselves.  Id. at 361.

34

The SEC claims that "Miller is liable for participating in a scheme to misrepresent Diebold's revenues and earnings." (Doc. 23, at 9.)  For example, the SEC theory is that Miller "made false accounting entries in order to make Diebold's financial condition appear better than it really was." (Doc. 33, at 2.)  This was allegedly part of a scheme to use sham accounting entries to misrepresent Diebold's financial statements.  Id. at 4.

For Miller to be potentially liable under a theory of scheme liability, then, the complaint must contain allegations that she (1) committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter.  Alstom, 406 F.Supp.2d at 474.  The alleged deceptive scheme or course of conduct must go beyond misrepresentations under Rule 10b-5(b).  Id. at 475.  The conduct must take the form of actions that were independently deceptive or fraudulent, such as sham or inherently deceptive transactions.  Lucent, 610 F.Supp.2d at 360; Collins & Aikman, 524 F.Supp.2d at 486.

Miller argues that the SEC has not pleaded scienter with the requisite particularity.  (Doc. 15, at 2, 34.)  She contends that the SEC must plead facts "giving rise to a strong inference" that she acted intentionally and recklessly.  (Doc. 15, at 32.)  As the SEC points out, that standard applies in PSLRA cases, and is not applicable in SEC enforcement actions.  (Doc. 22, at 33-34.)  See generally  15 U.S.C. § 78u-4(b)(2) (in any private action, complaint shall "state with particularity facts giving rise to a strong inference that the defendant acted with the required

state of mind"); SEC v. Falor, No. 1:09CV5644, 2010 WL 3385510, at *3 n.4 (N.D. Ill. Aug. 19, 2010). The SEC is not required to allege a strong inference of fraudulent intent. SEC v. Papa, 555 F.3d 31, 35 n.1 (1st Cir. 2009) ("strong inference" requirement inapplicable to SEC actions); SEC v. Betta, No. 09-80803-Civ., 2010 WL 963212, at *5 n.5 (S.D. Fla. Mar. 15, 2010); Falor, 2010 WL 3385510, at *3 n.4 (SEC not subject to more stringent pleading standards imposed by PSLRA); SEC v. Fisher, No. 07CV12552, 2008 WL 822135, at *2 n.2 (E.D. Mich. Mar. 27, 2008) (PSLRA applies only to private litigation).

Scienter is defined as a "mental state embracing intent to deceive, manipulate, or defraud." Fisher, 2008 WL 822135, at *2 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 2 (1976)); Collins & Aikman, 524 F.Supp.2d at 487; SEC v. Orr, No. 04-74702, 2006 WL 542986, at *9 (E.D. Mich. Mar. 6, 2006). The presence of scienter, where required, is crucial because, as mentioned earlier, the mere failure to follow GAAP alone is insufficient to state a claim. Konkol, 590 F.3d at 400. Allegations of violations of GAAP or SEC regulations, without fraudulent intent, are not sufficient to state a securities fraud claim. Chill, 101 F.3d at 270.

One method to plead scienter in a fraud action is to allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Chill, 101 F.3d at 267, 268. See also Glazer Capital Mgmt., LP v. Magistri, 549 F.3d 736, 745 (9th Cir. 2008); Key Equity Investors, Inc. v. Sel-Leb Marketing Inc., No. 06-1052, 2007 WL 2510385, at *3 (3d Cir. Sept. 6, 2007); SEC v. Stanard, No.

06 Civ. 7736, 2009 WL 196023, at *27 (S.D.N.Y. Jan. 27, 2009). For example, a

complaint may sufficiently allege scienter in this context where it is alleged that the

defendants "knew facts or had access to information suggesting that their public

statements were not accurate." ECA & Local 134 IBEW Joint Pension Trust of

Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198-199 (2d Cir. 2009)

### i. Bill-and-hold allegations

The SEC points to several instances in the amended complaint which they

argue support their claim of scheme liability. As to the allegedly improper use of

the bill-and-hold transactions, for example, the SEC points to Miller's "knowledge of

the fraud" as expressed in paragraphs 24, 36-37, and 43 of the complaint. (Doc. 23,

at 10.) Those paragraphs read:

> 24. Geswein, Krakora, and Miller knew, or were reckless in not
> knowing, that notwithstanding the revisions to the MOA, the
> transactions did not meet the criteria for bill-and-hold treatment to
> recognize revenue under GAAP because, for example, customers were
> not generally requesting products on a bill-and-hold basis, and
> bill-and-hold treatment was not being used for the customers' own
> business purposes. Thus, Geswein, Krakora and Miller knew or were
> reckless in not knowing that Diebold could not properly recognize
> revenue before delivery of the products to the customer.
>
> * * * * *
>
> 36. By at least 2005, Krakora and Miller knew or were reckless in not
> knowing that many of Diebold's supposed bill-and-hold sales of ATMs
> failed to meet another of the bill-and-hold criteria: That the products
> must be complete and that the seller must not retain any specific
> performance obligations. In fact, many of the ATMs sold under
> purported bill-and-hold terms were not complete because key software
> had not been loaded by the time that Diebold recognized revenue from
> the sales. Krakora and Miller knew, or were reckless in not knowing,

that Diebold was prematurely recognizing revenue on such incomplete products.

37. Additionally, by at least 2005, Krakora and Miller knew or were reckless in not knowing that Diebold was recognizing revenue for professional services and upgrades on a bill-and-hold basis.  Krakora and Miller knew, or were reckless in not knowing, that revenue cannot be recognized on services and upgrades on a bill-and-hold basis.

* * * * *

43. Krakora and Miller knew or were reckless in not knowing that GAAP required Diebold to correct the applicable 2003 financial statements to reflect the effect of this known error of $5.2 million. Yet, Krakora and Miller failed to do so.

(Doc. 4, Am.Compl., at ¶¶ 24, 36-37, 43.)

Regarding the first instance, the complaint alleges that

. . . in early 2004, Krakora, with Miller's assistance, redrafted the company's form sales contract [MOA]  . . . in an effort to make it appear that Diebold customers . . . were requesting a product on a bill-and-hold basis for the customer's business purposes even if the customers had not actually requested this and/or did not have a business purpose for bill-and-hold.

(Doc. 4, Am.Compl., at ¶ 23.)  It goes on to allege that Miller "knew or [was]

reckless in not knowing that Diebold could not properly recognize revenue before

delivery of the products to the customer."  Id. at ¶ 24.

In her motion, Miller contends that the complaint is insufficient as to

allegations of facts which would  support "any sort of fraudulent intent" on her part.

(Doc. 15, at 27.)  On the contrary, the court finds that the factual allegations

demonstrate strong circumstantial evidence of conscious misbehavior.  Chill, 101

F.3d at 268.

Similarly, the complaint alleges that Miller "knew, or [was] reckless in not knowing, that Diebold was prematurely recognizing revenue," and was improperly recognizing revenue for professional services and upgrades. (Doc. 4, Am.Compl., at ¶¶ 36-37.) Again, the court finds that the allegations demonstrate strong circumstantial evidence of conscious misbehavior.

The final example of "knowledge" provided by the SEC concerns an event that occurred in February 2004, which would appear be outside the May 2, 2004, statute of limitations. The complaint alleges that Miller learned, in Feb. 2004, that Diebold had prematurely recognized revenue on an order from PNC Bank. Allegedly, Miller did not correct the error, or adjust a profit margin reserve that the company had established, even though this error demonstrated that the reserve was inadequate. (Doc. 4, Am.Compl., at ¶ 42.) This event is outside the May 2, 2004, statute of limitations.

The SEC contends that the allegations discussed above "are sufficient to establish scheme liability on the part of Miller, for they establish that she had knowledge of the fraud." (Doc. 23, at 10.) The court agrees, as to those allegations which are timely. The complaint's factual  allegations related to violations of GAAP on Miller's part sufficiently allege fraudulent intent, thus are sufficient to state a securities fraud claim as to the allegedly improper use of bill-and-hold. Chill, 101 F.3d at 270.

39

### ii.  Fraudulent account entry allegations

The SEC asserts that the complaint "alleges a host of specific actions" by Miller "about her making fraudulent accounting entries in order to boost Diebold's revenues or earnings."  (Doc. 23, at 11.)

As one example, the SEC points to allegedly improper journal entries Miller made for the purpose of funding the company's long-term incentive plan.  (Doc. 23, at 11 n.5, citing ¶¶ 70-74 of the complaint.)  The first, a journal entry allegedly made by Miller in May 2003, is outside the May 2, 2004, statute of limitations.  See doc. 4, at ¶ 70.  The second, "another improper entry," is insufficiently alleged as to particularity (the time or date of the entry).  See id., at ¶ 71.

### iii.  Fraudulent manipulation of reserves

The SEC also refers to allegations that Miller improperly released funds from a reserve to fraudulently manage its earnings and meet earnings projections.  (Doc. 23, at 11 n.5, citing ¶¶ 78-82 of the complaint.)  It is alleged that, "over the course of 2004," Miller released the reserve to cover shortfalls in operating results.  Allegedly, Miller "knew or [was] reckless in not knowing that releasing the reserve in order to cover shortfalls in operating results, rather than based upon a legitimate accounting basis, was in violation of GAAP."  (Doc. 4, Am.Compl., at ¶ 78.)  At least part of this improper release was within the May 2, 2004, statute of limitations (although the release "in the first quarter 2004" would be outside the statute).  Id. at ¶ 79.  Beyond simply alleging that these releases violated GAAP, the complaint

alleges that Miller "knew or [was] reckless in not knowing that these entries had no legitimate accounting basis, and they were recorded to fraudulently manage Diebold's reported earnings." Id. at ¶ 80.

Although a portion of these allegations are outside the statute of limitations, the complaint otherwise sufficiently alleges scheme liability as to the improperly released funds.

### iv.  Used equipment write-ups

The complaint alleges that, "in the second quarter of 2004, Geswein and Krakora directed the write-up of value of used equipment inventory by $1 million . . . to inflate earnings to meet forecasts." (Doc. 4, Am.Compl., at ¶ 93.)  Further, "Miller improperly booked this $1 million entry without any legitimate accounting basis," and she knew or was reckless in not knowing that improper journal entries such as this would cause the revenue and earnings figures of Diebold to be overstated and false.  Id. at ¶¶ 94, 96-97.  These allegations of improper journal entries by Miller demonstrate strong circumstantial evidence of conscious misbehavior.

### v.  Improperly capitalizing expenses

Finally, the SEC points to allegations that Miller was involved in a "scheme to fraudulently boost revenues by improperly capitalizing costs that should have been expensed with regard to a project to implement Oracle software." (Doc. 23, at 12-13.)  The complaint alleges that, "in certain quarters when Diebold's earnings

41

were short of forecast," Miller "made top-level entries to fraudulently capitalize additional expenses to the Oracle project."  (Doc. 4, Am.Compl., at ¶ 89.)  The complaint points out that these entries were frequently in round numbers, and "had the effect of materially reducing reported expenses, and thus increasing reported earnings."  Id.  The complaint gives the dates of several examples, Miller's knowledge of the fraud, and otherwise sufficiently alleges scheme liability as to the Oracle expenses.  Id. at ¶¶ 89, 91.

In summary, the allegations against Miller sufficiently allege scheme liability as to those timely allegations concerning improper use of bill-and-hold, fraudulent manipulation of reserves, used equipment write-ups, and improper capitalizing of expenses, as discussed above.  The factual allegations demonstrate strong circumstantial evidence of conscious misbehavior.  The court finds that the claims have "facial plausibility," in that the SEC pleads facts which allow the court to draw the reasonable inference that Miller may be liable for the misconduct alleged.  On the other hand, the allegations concerning fraudulent accounting entries are untimely or insufficiently particularized.

## V.  ALLEGED VIOLATIONS OF SECT. 13(b)(5), EXCHANGE ACT

The third count alleges violations of the Exchange Act, Section 13(b)(5), 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.  (Doc. 4, at ¶¶ 118-

121.)  These allegations cover circumvention or failure to implement a system of internal controls, or falsifying books, records, or documents.

As to this count, Miller briefly asserts that the SEC fails to explain which journal entries were improper, and why.  (Doc. 15, at 31.)  She also states that this claim should be dismissed for failure to plead scienter with particularity.  Id. at 34.

The SEC responds in a similarly concise manner:  "Miller could read paragraphs 70-71, 79, 89, 93-94, and 100(a), for those give ample detail about her journal entries."  (Doc. 23, at 36.)  Reference to the complaint reveals, for example, that Miller is alleged to have made, for example, "another improper entry," at some unidentified time (doc. 4, at ¶ 71), and at another point ("in the second quarter of 2004") Miller improperly booked an entry without a legitimate accounting basis (doc. 4, at ¶¶ 93-94).

The SEC does not explain how its allegations meet the elements of the claim.  The SEC does not establish that the allegations of the complaint concerning the third count meet the particularity requirements of Rule 9(b).  In addition, the complaint does not  allege with particularity the time, place and contents of the alleged misconduct.  Frank, 547 F.3d at 570.

The third count should be dismissed.

## VI.  AIDING & ABETTING VIOLATIONS OF SECT. 13, EXCHANGE ACT

The sixth count alleges that the three defendants aided and abetted Diebold's violations of the Exchange Act, Section 13(a), 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.1313a-13.  (Doc. 4, at ¶¶ 129-132.)  Miller argues briefly that this count should be dismissed because the SEC has failed to allege that Miller "played any role in the preparation of the reports whatsoever."  (Doc. 15, at 31.)

The SEC responds that Miller need not have prepared the reports in order aid and abet a violation.  (Doc. 23, at 36.)  The SEC complains that "the only case that Miller cites . . . for the standards for aiding-and-abetting liability" is "not even remotely on point."  Id.  The SEC, in contrast, does not cite any case at all to establish the standard, or to explain how its allegations meet the elements[4] of the claim.  The SEC is apparently content to state that "Miller provided substantial assistance by the myriad actions described above."  Id.  The court does not find this of any assistance in clarifying the details of the vague allegations of the complaint. See generally doc. 4, at ¶¶ 129-132.

The sixth count should be dismissed.

The seventh count alleges that the defendants aided and abetted Diebold's violations of the Exchange Act, Sections 13(b)(2)(A), and 13(b)(2)(B), 15 U.S.C. §§

---

[4]  See, e.g., Power, 525 F.Supp.2d at 422-423 (discussing elements of aiding and abetting violation); Lucent, 610 F.Supp.2d at 361; Collins & Aikman, 524 F.Supp.2d at 491.

78m(b)(2)(A), and 78m(b)(2)(B).  (Doc. 4, at ¶¶ 133-136.)  Again, Miller's argument is that she is "left to guess which journal entries the SEC believes were improper without proper context for the SEC's belief."  (Doc. 15, at 31.)

Again, the SEC does not explain how its allegations meet the elements of the claim.  See generally doc. 23, at 36.  The SEC does not establish that the allegations of the complaint concerning the seventh count meet the particularity requirements of Rule 9(b).  In addition, the complaint does not  allege with particularity the time, place and contents of the alleged misconduct.  Frank, 547 F.3d at 570.  Scienter is not established.

The seventh count should be dismissed.


## VII.  EQUITABLE RELIEF

Miller argues the SEC's request for an injunction is improper, "because it does not seek an enforceable order."  (Doc. 15, at 20-23.)  Miller also argues that the SEC's prayer for disgorgement seeks a forfeiture.  Id. at 23-24.  Miller raises these arguments in the context of her arguments concerning the statute of limitations.  See generally doc. 15, at 12-24.  As discussed earlier, Section 2462's statute of limitations does not apply to the SEC's request for injunctive relief or disgorgement.

Miller claims that an injunction which seeks only to prevent Miller from violating federal securities laws is impermissible.  (Doc. 15, at 20.)  However, the Sixth Circuit has found that "[t]he SEC may seek permanent or temporary

45

injunction against future violations of securities laws . . . upon showing there is a reasonable and substantial likelihood that, if not enjoined, the defendant would violate securities laws in the future." Quinlan, 2010 WL 1565473, at *4 (citing SEC v. Youmans, 729 F.2d 413, 415 (6th Cir. 1984)); see also SEC v. Washington County Utility Dist., 676 F.2d 218, 227 (6th Cir. 1982).  Miller's argument is not well taken.

The SEC will have to show a reasonable and substantial likelihood that the defendants, if not enjoined, would violate the securities laws in the future.  See generally Washington County, 676 F.2d at 227.  Thus, it would be premature to dismiss a request for injunctive relief at this juncture.[5]  This issue should await resolution until after the SEC has had the opportunity to conduct discovery and to present evidence as to Miller's propensity, if any, to engage in future violations. See, e.g., SEC v. Hopper, No. Civ.A. H-04-1054, 2006 WL 778640, at *16 (S.D. Tex. Mar. 24, 2006); SEC v. C. Jones & Co., 312 F.Supp.2d 1375, 1382 (D. Colo. 2004).

As for disgorgement, this court agrees with "the well-settled characterization of disgorgement as remedial, merely preventing the unjust enrichment as the result

---

[5]  Miller urges the court to dismiss the prayer for relief because the complaint does not allege a reasonable and substantial likelihood, citing SEC v. Brethen, No. C-3-90-071, 1992 WL 420867, at *1 (S.D. Ohio Oct. 15, 1992).  (Doc. 15, at 22.) However, Brethen was not ruling on a motion to dismiss, but rather followed a bench trial on the merits.  The court does not find Gabelli persuasive on dismissal, because the court was motivated by several issues beyond the mere wording of the prayer for relief.  See, e.g., Gabelli, 2010 WL 1253603, at *10 (SEC did not allege "how Defendants' acts are particularly egregious, and even concedes that any market-timing was not, by itself, fraudulent or illegal").

of a defendant's wrongdoing."  SEC v. O'Hagan, 901 F.Supp. 1461, 1468 (D.Minn. 1995) (citing cases); Lorin, 869 F.Supp. at 1122 ("disgorgement merely returns the wrongdoer to the status quo before any wrongdoing had occurred"); SEC v. Fisher, No. 07 C 4483, 2008 WL 2062699, at *8 (N.D. Ill. May 13, 2008).

The D.C. Circuit has found that an "order to disgorge is not a punitive measure; it is intended primarily to prevent unjust enrichment." Zacharias, 569 F.3d at 471 (quoting SEC v. Banner Fund Int'l, 211 F.3d 602, 617 (D.C. Cir. 2000)). The Supreme Court has explained that the words "penalty or forfeiture" refer to "something imposed in a punitive way for an infraction of a public law."  The Court distinguished a situation where "the liability sought to be enforced was not punitive, but strictly remedial." Meeker v. Lehigh Valley R Co., 236 U.S. 412, 422-423 (1915).  Another federal court found that "a 'penalty,' as the term is used in § 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's action." Coghlan v. National Transp. Safety Bd., 470 F.3d 1300, 1305 (11th Cir. 2006) (citing Johnson v. SEC, 87 F.3d 484, 488 (D.C. Cir. 1996)).


## VII.  SUMMARY

The motion to dismiss (doc. 15) should be granted in part, and denied in part, on timeliness grounds.  Claims for civil penalties in an SEC civil enforcement action

are governed by Section 2462, which has a five year statute of limitations. Quinlan, 2010 WL 1565473, at *6; Zacharias, 569 F.3d at 471. Any claims for civil penalties against Miller based on conduct occurring prior to May 2, 2004, are not actionable as time-barred under 28 U.S.C. § 2462. The court finds that the SEC cannot rely on the doctrine of fraudulent concealment to toll any untimely claims against the defendants.

However, although Section 2462's statute of limitations applies to the claims for civil penalties, it does not apply to the SEC's request for equitable relief, such as permanent injunctive relief or disgorgement. Gabelli, 2010 WL 1253603, at *5; Power, 525 F.Supp.2d at 426-427; DiBella, 409 F.Supp.2d at 127. Thus, to the extent that the SEC seeks to enjoin Miller from violating or aiding and abetting the violation of the securities laws, or an order directing her to disgorge profits, in order to remedy an alleged past wrong and protect the public from future harm, the five-year statute of limitations of Section 2462 does not apply.

The court finds that the amended complaint, although poorly drafted, pleads sufficient factual content to allow the court to draw the reasonable inference that Miller may be liable for certain instances of misconduct alleged in the first and second counts, discussed in more detail above. Specifically, the SEC has sufficiently alleged scienter as to Miller in those instances. Thus, the motion as to the first and second claims should be granted in part, and denied in part.

The third, sixth, and seventh counts against Miller should be dismissed.

The court denies the motion to dismiss on the ground that the SEC may not seek the remedies of  injunctive relief or disgorgement.

The motion to dismiss (doc. 15) should be granted in part, and denied in part, as discussed above.


## RECOMMENDATION

It is recommended that Miller's motion to dismiss (doc. 15) be granted in part and denied in part.


Dated:   Aug. 2, 2011                         /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).