UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES & EXCHANGE COMMISSION, | ) 5:10CV1235 |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) JUDGE CHRISTOPHER BOYKO |
| v. | ) (Mag. Judge McHargh) |
| | ) |
| GREGORY GESWEIN, et al., | ) |
| | ) |
| Defendants. | ) REPORT AND |
| | ) <u>RECOMMENDATION</u> |

McHARGH, MAG. J.

The plaintiff United States Securities and Exchange Commission ("SEC") has

filed an amended complaint[1] against defendants Gregory Geswein ("Geswein"),

Kevin Krakora ("Krakora"), and Sandra Miller ("Miller"). (Doc. 4.) The complaint

identifies Geswein as the former Chief Financial Officer (CFO) of Diebold, Inc.

("Diebold"), an Ohio corporation. Krakora was formerly Diebold's Controller, and

later its CFO. Miller was Diebold's former Director of Corporate Accounting. (Doc.

4, at ¶ 1.)

---

[1] As the amended complaint (doc. 4) is now the operative complaint, the court will often simply refer to "the complaint," rather than, "the amended complaint." No reference is intended to the original complaint, unless it is cited specifically as "doc. 1."

Currently before the court are motions to dismiss filed by defendants Krakora (doc. 16) and Geswein (doc. 17).  Defendant Miller has also filed a motion to dismiss (doc. 15), which has been addressed separately.

The complaint alleges eight counts against the defendants.  The complaint contains many diverse allegations, but generally speaking, the complaint alleges that the defendants used improper, and in many instances, fraudulent accounting practices during the period of 2002 to 2007.  These improper accounting practices significantly inflated the company's reported earnings, allegedly, as provided in its periodic filings and information disseminated to investors.  See generally doc. 4, Am.Compl., at ¶¶ 1-111.

The first count alleges violations of the Securities Act, Section 17(a), 15 U.S.C. § 77q(a).  (Doc. 4, at ¶¶ 112-114.)  The second count alleges violations of the Exchange Act, Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  Id. at ¶¶ 115-117.  The third count alleges violations of the Exchange Act, Section 13(b)(5), 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.  Id. at ¶¶ 118-121.  These three claims concern all three defendants.

The fourth claim for relief alleges violations of Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.  (Doc. 4, at ¶¶ 122-124.)  The fifth claim for relief alleges violations of Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14.  Id. at ¶¶ 125-128.  The fourth and fifth counts are against defendants Geswein and Krakora only.

The sixth count alleges that the three defendants aided and abetted Diebold's violations of the Exchange Act, Section 13(a), 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.1313a-13.  (Doc. 4, at ¶¶ 129-132.)  The seventh count alleges that the defendants aided and abetted Diebold's violations of the Exchange Act, Sections 13(b)(2)(A), and 13(b)(2)(B), 15 U.S.C. §§ 78m(b)(2)(A), and 78m(b)(2)(B).  Id. at ¶¶ 133-136.

The final, eighth, claim for relief is that Geswein and Krakora failed to make required reimbursements, in violation of Section 304 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7243.  (Doc. 4, at ¶¶ 137-145.)

The SEC seeks the following relief:

(a) Permanently enjoining each defendant from violating, directly or indirectly, Securities Act Section 17(a), Exchange Act Sections 10(b) and 13(b)(5) and Exchange Act Rules 10b-5 and 13b2-1 and from aiding and abetting violations of Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13;

(b) Permanently enjoining Geswein and Krakora from violating, directly or indirectly, Exchange Act Rules 13a-14 and 13b2-2;

(c) Ordering each defendant to disgorge ill-gotten gains, with prejudgment interest, including, but not limited to, salaries, bonuses, and other benefits wrongfully obtained as a result of their fraudulent conduct;

(d) Imposing civil monetary penalties against each defendant pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

(e) Pursuant to Securities Act 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)], prohibiting Geswein and Krakora from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l], or that is required to file reports pursuant to Exchange Act Section 15(d) [15 U.S.C. § 78o(d)];

(f) Ordering Geswein and Krakora to reimburse Diebold for bonuses and other incentive-based and equity-based compensation that each received from Diebold, pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243]; and

(g) Granting such other and further relief as the Court deems just and appropriate.

(Doc. 4, at 39.)

Defendant Krakora has filed a motion to dismiss the amended complaint, for failure to state a claim under Civil Rule 12(b)(6).  (Doc. 16.)  Plaintiff SEC has filed a memorandum in opposition (doc. 22), and Krakora has filed a reply brief (doc. 27).

Defendant Geswein has also filed a motion to dismiss the amended complaint, for failure to state a claim under Rule 12(b)(6), and for failure to comply with Civil Rule 9(b).  (Doc. 17.)  Plaintiff SEC has filed a memorandum in opposition (doc. 21), and Geswein has filed a reply memorandum (doc. 26).  Geswein has also filed notice of supplemental authority (doc. 29), and the SEC has filed a response (doc. 30).

Finally, defendant Miller filed a motion to dismiss the amended complaint, for failure to state a claim under Rule 12(b)(6), and for failure to comply with Rule 9(b).  (Doc. 15.)  Plaintiff SEC has filed a memorandum in opposition (doc. 23), and

4

Miller has filed a reply brief (doc. 25).  As mentioned earlier, Miller's motion has
been addressed in a separate memorandum.


## I.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Until fairly recently, the standard for a motion to dismiss for failure to state
a claim upon which relief can be granted was that the motion establish, beyond a
reasonable doubt, that "the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957);
Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied,
516 U.S. 1158 (1996).  However, in Bell Atlantic Corp. v. Twombly, 550 U.S. 554
(2007), the Supreme Court modified the standard, in particular the "no set of facts"
phrase.

The Court's ruling in Twombly abrogated Conley, and moved away from the
pure notice pleading standards that had previously been a hallmark of the Civil
Rules.  The Twombly Court asserted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.  Factual allegations must be enough to raise a right
> to relief above the speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

Twombly, 550 U.S. at 555 (citations omitted).  See also Gunasekera v. Irwin, 551
F.3d 461, 466 (6th Cir. 2009); Association of Cleveland Fire Fighters v. City of

5

Cleveland, 502 F.3d 545, 548 (6th Cir. 2007).  The Court protested that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Compare 5 Wright & Miller, Federal Practice and Procedure, § 1216 (2004) ("Conspicuously absent from Federal Rule 8(a)(2) is the requirement found in the [earlier] codes that the pleader set forth the 'facts' constituting a 'cause of action'.")  Justice Stevens, in dissent, characterized the decision as a "dramatic departure from settled procedural law." Twombly, 550 U.S. at 573 (Stevens, J, dissenting).

In Ashcroft v. Iqbal, the Court clarified that the new Twombly standard is not intended to be limited to complicated litigation, such as the antitrust conspiracy case in Twombly.  Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The Court asserted that the new pleading standards governing Rule 8(a) do not require "detailed factual allegations," however they do require "factual enhancement." Iqbal, 129 S.Ct. at 1949.  Only "a complaint that states a plausible claim for relief" will survive a motion to dismiss. Id. at 1950.

The Court summarized its new "plausibility" standard as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

6

Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. 554).  See, e.g., Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (plausibility standard).  In other words, when resolving a motion to dismiss, the court is now required to locate the allegations of the complaint on a possibility – plausibility – probability continuum. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

The Supreme Court stated that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  Twombly, 550 U.S. at 563 n.8.  The function of the court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses.  Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).  Rather, the court is simply to determine "whether a complaint states a plausible claim for relief."  Iqbal, 129 S.Ct. at 1950.

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural, and tests the sufficiency of the complaint.  Miller, 50 F.3d at 377.  The court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true. Central States Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252, 255 (6th Cir. 1997).  However, the court is "not bound to accept as true a legal conclusion couched

7

as a factual allegation." Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555).

### A.  Civil Rule 9(b)

The defendants seek dismissal of several counts on the basis that those allegations of the amended complaint sounding in fraud do not satisfy the requirements of Civil Rule 9(b), namely, that "the circumstances constituting fraud . . . shall be stated with particularity."  See, e.g., doc. 17, at 9-14; doc. 16, at 18-23. See generally Fed. R. Civ. P. 9(b); Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 563 (6th Cir. 2003); American Bonding Co., Inc. v. American Contractors Indem. Co., No. 2:10CV441, 2011 WL 1043946, at *3 (S.D. Ohio Mar. 18, 2011).  Securities fraud claims, as with any fraud claim, must satisfy the pleading requirements of Rule 9(b).  Konkol v. Diebold, Inc., 590 F.3d 390, 396 (6th Cir. 2009); Frank v. Dana Corp., 547 F.3d 564, 569-570 (6th Cir. 2008).

The purpose of Rule 9(b)'s particularity requirement "is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."  Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988).  See also Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 322 (6th Cir. 1999).

To meet the particularity requirements of Rule 9(b), the SEC's complaint must  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." Frank , 547 F.3d at 570 (quoting

Gupta v. Terra Nitrogen Corp., 10 F.Supp.2d 879, 883 (N.D. Ohio 1998); Hartop v.

Deutsche Bank Nat. Trust Co., No. 10-10078, 2010 WL 4272601, at *6 (E.D. Mich.

Oct. 13, 2010) (quoting Frank); SEC v. Power, 525 F.Supp.2d 415, 422 (S.D. N.Y.

2007). The Sixth Circuit reads Rule 9(b)'s requirements liberally. Advocacy Org.,

176 F.3d at 322. At a minimum, the SEC must allege with particularity the time,

place and contents of the fraud or misrepresentations. Frank, 547 F.3d at 570

(citing Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir. 1984)). See also

SEC v. Tambone,  597 F.3d 436, 442 (1st Cir. 2010) (en banc) (must plead time,

place, and content of alleged misrepresentation with specificity); Advocacy Org., 176

F.3d at 322.

　　　　Thus, where a complaint fails to identify specific statements that are

allegedly fraudulent, fails to identify the specific speaker(s), and fails to detail when

and where the alleged statements were made, the complaint fails to meet the

pleading standards for fraud under Rule 9(b). See, e.g., Gupta, 10 F.Supp.2d at 883.

See also Yuhasz, 341 F.3d at 564 (failure to identify specific parties or fraudulent

acts requires dismissal); 5 Wright & Miller, Federal Practice and Procedure, § 1297

(particularity required as to time, place and contents of misrepresentations, as well

as identity of speaker).

## II.  STATUTE OF LIMITATIONS

Geswein and Krakora argue that any conduct occurring prior to June 2, 2004, is not actionable as time-barred under 28 U.S.C. § 2462.  (Doc. 17, at 25-28; doc. 16, at 6-10.)

> The relevant statute reads:
>
> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.  Claims for civil penalties in an SEC civil enforcement action are governed by Section 2462.  SEC v. Quinlan, No. 08-2619, 2010 WL 1565473, at *6 (6th Cir. Apr. 21, 2010).

The SEC filed this action on June 2, 2010.  (Doc. 1.)  All three defendants signed tolling agreements that tolled and suspended the running of the statute of limitations for one year (or, in the case of Miller, thirteen months).  (Doc. 4, at ¶ 108; doc. 17, at 27; doc. 16, at 6.)  Krakora appears to suggest that the SEC was remiss in not filing charges when the tolling agreements expired.  (Doc. 16, at 8.)  This is incorrect:  "During the period the tolling agreements were in effect, the statute of limitations stopped running.  When the tolling agreements expired, the statute of limitations began to run again."  SEC v. Kelly, 663 F.Supp.2d 276, 287 (S.D.N.Y. 2009).

10

A.  Running of Statute of Limitations Not Triggered by Discovery Rule

The SEC contends that, under the "discovery rule," the limitations period does not begin until a reasonably diligent plaintiff would have discovered the facts constituting the violation.  (Doc. 21, at 36 n.27, citing Merck & Co., Inc. v. Reynolds, 130 S.Ct. 1784, 1798 (2010); doc. 22, at 8.)  The SEC claims that Merck affirmed the application of the discovery rule in securities fraud cases.  (Doc. 21. at 38; doc. 22, at 8).  Geswein responds that the discovery rule is inapplicable under Section 2462, because the claim accrues on the date of the alleged violation.  (Doc. 26, at 15, citing cases.)

As pointed out by Geswein (doc. 26, at 15) and Krakora (doc. 27, at 26), Merck "concerns the timeliness of a complaint filed in a private securities fraud action." Merck, 130 S.Ct. at 1789.  The relevant statute would determine that a "complaint was timely if filed no more than two years after the plaintiffs 'discover[ed] the facts constituting the violation.'" Merck, 130 S.Ct. at 1789 (quoting 28 U.S.C. § 1658(b)(1)).  There is no mention of Section 2462 in the Merck case. Rather, the Court interpreted the meaning of the word "discovery" as it is used in 28 U.S.C. § 1658(b)(1). Merck, 130 S.Ct. at 1793-1796.

The D.C. Circuit in 3M Co. v. Browner, on the other hand, discussed the discovery rule in relation to Section 2462.  The court noted that the statute required an action to be brought within five years from the date when the claim "accrued," and noted that the meaning of "accrued" in this statute has been settled for more

11

than a century.  3M Co. v. Browner, 17 F.3d 1453, 1461-1462 (D.C. Cir. 1994).  The

Browner court discussed long-standing Supreme Court precedent that the phrase

"claim accrued" is used to "to mean the time at which a cause of action first existed,

not the time when the violation was first discovered." Id. at 1462.  The court

rejected the "discovery of violation rule," as being outside the language of the

statute, and inconsistent with judicial interpretations of Section 2462. Id. at 1462-

1463.  Other federal courts have also rejected the application of the discovery rule to

the commencement of the running of limitations periods under § 2462. See, e.g.,

Federal Election Comm'n v. Williams, 104 F.3d 237, 240 (9th Cir. 1996), cert.

denied, 522 U.S. 1015 (1997) (distinguishing, however, tolling based on fraudulent

concealment).

### B.  Section 2462's Statute of Limitations and Equitable Relief

Krakora asserts that, because the SEC seeks civil penalties, Section 2462

applies to the entire complaint.  (Doc. 27, at 24-25; doc. 16, at 6-7.)  "Because all of

the remedies sought by the SEC are, as pled, wholly punitive, the time limitations

of Section 2462 govern every claim for relief.) (Doc. 27, at 26.)

In a similar argument, Geswein contends that Section 2462 applies to the

entire action, and thus any allegations concerning his conduct that predate June 2,

2004, are untimely.  (Doc. 17, at 25-27.)  For example, Geswein claims that the only

financial statements published in the relevant time frame, which were allegedly

certified by Geswein "are the Forms 10-Q for the second and third quarters of 2004,

the Forms 10-K and 10-KA for 2004, and the Forms 10-Q and 10-QA for the first
quarter of 2005." (Doc. 17, at 27.)

Krakora argues that, because the SEC seeks civil penalties here, "the SEC
has invoked the limitations provisions of [S]ection 2462, which bars actions, suits or
proceedings for claims greater than five years old, not particular forms of relief."
(Doc. 16, at 7, citing Luckenbach S.S. Co. v. United States, 312 F.2d 545, 548 (2d
Cir. 1963).)

The plain wording of the statute would appear to support an argument that
the limitations period should pertain to an entire "action, suit or proceeding for the
enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise," not
merely to certain claims for relief within such an action or proceeding.  See
generally 28 U.S.C. § 2462.  In addition, it would appear from the plain language of
the statute that any type of equitable tolling, and similar doctrines which may be
applied to toll or extend the statute of limitations, would not apply unless
specifically authorized by Congress.  See 28 U.S.C. § 2462 ("Except as otherwise
provided by Act of Congress ...").  However, this is not a case of first impression, and
federal courts have applied a more expansive reading of the statute.

The Sixth Circuit has found that "claims for civil penalties in a civil
enforcement action brought by the SEC have been recognized as being governed by
§ 2462." Quinlan, 2010 WL 1565473, at *6.  See also Zacharias v. SEC, 569 F.3d
458, 471 (D.C. Cir. 2009) (may not impose civil penalties in enforcement action

13

initiated more than five years after offender committed illegal act).  The Quinlan

court recognized that whether equitable remedies, such as "orders of disgorgement,

injunctions against future violations, or imposition of an officer and director bar,"

are subject to the statute of limitations in Section 2462 is an unsettled question.

Quinlan, 2010 WL 1565473, at *6.

The district court in Quinlan undertook a "fact-intensive inquiry," based on

related criminal proceedings, to determine whether the equitable remedies sought

in that case were remedial or punitive.  Quinlan, 2010 WL 1565473, at *6.  Such an

inquiry is clearly inappropriate on a motion to dismiss, which merely assesses the

sufficiency of the pleadings.  However, the court of appeals did affirm the district

court's finding that, because the equitable relief was remedial, rather than punitive,

the equitable relief was thus not a "penalty" subject to Section 2462's five-year

statute of limitations.  Id. at *7.  Thus, the Sixth Circuit has agreed that equitable

relief is not necessarily subject to the statute of limitations.

The Southern District of New York provided a useful summary of the issue in

SEC v. Jones:

> While § 2462 applies to SEC actions seeking civil penalties, some
> courts have found that Commission suits for equitable and remedial
> relief "are not governed by § 2462 because they are not actions or
> proceedings for a 'penalty' within the meaning of the statute."  Most of
> these courts have determined that § 2462 does not apply to equitable
> relief that seeks to undo prior damage or protect the public from future
> harm.
>
> In Johnson v. SEC, 87 F.3d 484, 486-92 (D.C. Cir. 1996), the D.C.
> Circuit Court of  Appeals answered the question of whether § 2462

14

should apply to equitable relief that does not seek to undo damage or prevent future harm to the public.  It held that where equitable relief acts as a penalty – not a remedial measure – the five-year limitations period in § 2462 applies.  The court distinguished the remedies thus: a remedial measure restores the wronged party to its status quo ante, correcting or undoing the effects of a particular wrong, whereas a penalty is "a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's actions."

Johnson further held that an equitable remedy, such as an injunction, which is primarily aimed at preventing future harm to the public, rather than at punishing a particular defendant, may be characterized as remedial though it is not directly tied to restoring the status quo ante.

In light of the relevant case law, the ordinary meaning of "penalty," and the clear language of § 2462, the Court holds that the limitations period in § 2462 applies to civil penalties and equitable relief that seeks to punish, but does not apply to equitable relief which seeks to remedy a past wrong or protect the public from future harm.

SEC v. Jones, 476 F.Supp.2d 374, 380-381 (S.D. N.Y. 2007) (internal citations omitted).

Therefore, generally, "Section 2462's statute of limitations applies to the SEC's request for civil penalties but not to its request for permanent injunctive relief [or] disgorgement."  SEC v. Gabelli, No. 08CV3868, 2010 WL 1253603, at *5 (S.D.N.Y. Mar. 17, 2010) (quoting Kelly, 663 F.Supp.2d at 287).  For example, federal courts have found that "Section 2462 does not preclude disgorgement actions brought by the SEC where the claim seeks to 'deprive one of wrongfully obtained proceeds.'"  SEC v. DiBella, 409 F.Supp.2d 122, 127 (D. Conn. 2006) (quoting SEC v. Lorin, 869 F.Supp. 1117, 1122 (S.D.N.Y. 1994)).  See also Power, 525 F.Supp.2d at

426 (disgorgement is equitable remedy to which SOL does not apply).  As to the injunctive relief sought, "whether a permanent injunction constitutes a 'penalty' under Section 2462 depends on the likelihood of recurrence." Power, 525 F.Supp.2d at 427.  The mere fact that defendants may suffer some loss is not sufficient to render a sanction punitive.  Zacharias, 569 F.3d at 471.

Thus, to the extent that the SEC seeks to enjoin the defendants from violating or aiding and abetting the violation of the securities laws, or an order directing the defendants to disgorge profits, in order to remedy an alleged past wrong and protect the public from future harm, the five-year statute of limitations of Section 2462 does not apply.  However, the SEC also seeks the imposition of civil monetary penalties (doc. 4, at 39), which are subject to Section 2462, and which will be addressed below.

### C.  Continuing Course of Conduct

The SEC alleges that the defendants' "actions and practices" were part of a continuing course of conduct, "designed to inflate Diebold's reported revenues and earnings." (Doc. 4, at ¶ 105.)  The continuing violation doctrine "applies only where a violation, occurring outside of the limitation period, is so closely related to other violations, not time-barred, as to be viewed as part of a continuing practice such that recovery can be had for all violations." SEC v. Schiffer, No. 97CIV5853, 1998 WL 226101, at *3 (S.D.N.Y. May 5, 1998) (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-381 (1982).)

Geswein asserts that Section 2462 is not subject to extension through the continuing violation doctrine.  (Doc. 17, at 28, citing SEC v. Harden, No. 1:05CV354, 2006 WL 89864, at *2 (W.D. Mich. Jan. 12, 2006).)  Krakora also argues that the continuing fraud doctrine does not apply to securities cases.  (Doc. 16, at 8, citing cases.)  The SEC cites case law to the contrary, in which the continuing violation doctrine was applied in a case involving federal securities laws.  (Doc. 21, at 38, citing SEC v. Ogle, No. 99C609, 2000 WL 45260, at *4-*5 (N.D. Ill. Jan. 11, 2000); doc. 22, at 8-9 (citing Ogle and SEC v. Huff, 745 F.Supp.2d 1284, 1334 (S.D. Fla. 2010), amended by 2010 WL 5287452 (S.D. Fla. Dec. 17, 2010)); see also SEC v. Kearns, 691 F.Supp.2d 601, 613 (D. N.J. 2010).)

However, where there are unresolved issues of fact which concern the application of the continuing violation doctrine, as there are here, it would be premature to dismiss on this basis.  See, e.g., SEC v. Des Champs, No. 2:08CV01279, 2009 WL 3068258, at *2 (D. Nev. Sept. 21, 2009); SEC v. Pentagon Capital Management PLC, 612 F.Supp.2d 241, 267 (S.D.N.Y. 2009); In re Comverse Tech., Inc. Securities Litigation, 543 F.Supp.2d 134, 155 (E.D.N.Y. 2008) (prudent to defer consideration until factual record developed); Schiffer, 1998 WL 226101, at *3.

17

## D.  Fraudulent Concealment

The SEC alleges that the defendants "fraudulently concealed their wrongful conduct through a number of steps which helped prevent their conduct from being discovered by the Commission." (Doc. 4, at ¶ 106.)

Geswein and Krakora argue that Section 2462 is not subject to equitable extensions, such as fraudulent concealment. (Doc. 17, at 28, citing Harden, 2006 WL 89864, at *2; doc. 16, at 9.) And even if Sect. 2462 were subject to equitable tolling, the defendants contend that the SEC has not pleaded fraudulent concealment with the requisite particularity. (Doc. 17, at 28; doc. 16, at 9.)

Federal courts have found that the five-year statute of limitations in Section 2462 can be tolled by the fraudulent concealment doctrine. F.E.C. v. Williams, 104 F.3d at 240 (citing United States v. Core Lab.s, Inc., 759 F.2d 480, 484 (5th Cir. 1985); and United States v. Firestone Tire & Rubber Co., 518 F.Supp. 1021, 1036 (N.D. Ohio 1981)); Power, 525 F.Supp.2d at 424; Jones, 476 F.Supp.2d at 381-382. See generally Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946).

Regarding the doctrine of fraudulent concealment, the Sixth Circuit has found that:

> In order to establish equitable tolling by fraudulent concealment, plaintiffs must allege and establish that:  1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitation period; and 3) until discovery of the cause of action, plaintiffs exercised due diligence in trying to find out about the cause of action.

Whittiker v. Deutsche Bank Nat. Trust Co., 605 F.Supp.2d 914, 927 (N.D. Ohio 2009) (citing Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1465 (6th Cir.), cert. denied, 488 U.S. 880 (1988)); see also Egerer v. Woodland Realty, Inc., 556 F.3d 415, 422 (6th Cir. 2009) (citing Pinney Dock); Power, 525 F.Supp.2d at 424; Somin v. Total Community Mgmt. Corp., 494 F.Supp.2d 153, 158-159 (E.D. N.Y. 2007).

The Supreme Court has recognized the importance of statutes of limitation, ruling that:

> . . . the plaintiff who invokes the doctrine of fraudulent concealment will be "held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.'"

Pinney Dock, 838 F.2d at 1465 (quoting Wood v. Carpenter, 101 U.S. (11 Otto) 135, 139-40 (1879) (internal citation omitted)); see also Yuhasz, 341 F.3d at 563 (circumstances constituting fraud must be stated with particularity). "Conclusory allegations of fraudulent concealment are not sufficient to withstand a motion to dismiss." Moll v. U.S. Life Title Ins. Co. of New York, 700 F.Supp. 1284, 1289 (S.D. N.Y. 1988).  In accordance with Rule 9(b), plaintiffs must plead with particularity any fraudulent conduct which would justify equitable tolling on that basis.  Id.

Geswein contends that the SEC did not allege that he concealed his actions. (Doc. 17, at 29-30.)  The SEC responds that it sufficiently alleges specific concealment by Geswein, including by way of example, "his February 2005 false

19

response to a direct query (or comment) by the SEC staff about Diebold's revenue recognition practices."  (Doc. 21, at 39, citing ¶ 106(a) of the amended complaint.) Geswein allegedly misled the SEC when he stated that Diebold recognizes revenue when "the products or services have been provided to the customer."  See doc. 17, DX 13, at 2.  The SEC also claims that "such allegations of active concealment by defendants are sufficient 'at the pleading stage.'"  (Doc. 21, at 39, citing Power, 525 F.Supp.2d at 425.)

> The allegation which the SEC cites in support reads:
>
> On February 18, 2005, Geswein wrote a letter to the Commission staff, in response to the staff's question about how Diebold recognized revenue.  Geswein misled the staff by stating, among other things, that Diebold recognizes revenue when "the products or services have been provided to the customer."  This was substantially false and misleading because, as Geswein knew or was reckless in not knowing, Diebold's bill-and-hold practices were contrary to that statement.  Geswein's statement concealed Diebold's improper use of bill-and-hold accounting.

(Doc. 4, Am.Compl., at ¶ 106(a).)  Geswein counters that this letter does not support an allegation that Geswein fraudulently concealed Diebold's revenue recognition policies, but rather the letter described them in detail.  (Doc. 17, at 29-30.)  Geswein argues that it was true that "Diebold generally recognized revenue upon product delivery," and that he "did not say that Diebold only recognized revenue when products were actually delivered."  (Doc. 26, at 17.)

The allegation is that Diebold improperly used "bill-and-hold" accounting to prematurely recognize revenue, for example, by recognizing revenue on "F-term"

orders, when the products were shipped from the factory to Diebold's warehouse, rather than when they were delivered to the customer.  (Doc. 4, at ¶¶ 14-19.)  The SEC alleges that many of these transactions did not meet the criteria to be properly recognized under "bill-and-hold" accounting.  Id. at ¶¶ 15, 17-18.  If the allegations prove to be true, then Geswein's Feb. 18 letter concealed from the SEC that revenue was recognized when Diebold shipped certain products to their warehouse, rather than when "the products or services have been provided to the customer."  See doc. 17, DX 13, at 2.  Hence, the allegation that Geswein's letter was "substantially false and misleading" is plausible.

Krakora contends that the SEC does not plead that it failed to discover the alleged wrongful conduct during the limitations period.  (Doc. 16, at 9.)  In fact, Krakora claims that the SEC could not do so, because it informed him in March 2009, while the tolling agreement was in effect, that it intended to bring these charges against him.  Id. at 9-10.

Geswein also claims that the SEC has not alleged that it failed to discover the facts upon which its claims are based within the limitation period, and that it has failed to allege that it exercised due diligence until it discovered those facts.  (Doc. 17, at 30; doc. 26, at 17.)  The complaint does allege that the SEC was diligent in investigating the accounting at Diebold.  (Doc. 4, at ¶ 107.)  The early 2005 inquiry is some evidence in support of this assertion.  See id. at ¶ 106(a).

21

However, the second element of fraudulent concealment which must be alleged is that "defendants' concealment prevented plaintiffs from discovering the cause of action within the limitation period."  Pinney Dock, 838 F.2d at 1465; Whittiker, 605 F.Supp.2d at 927.  In particular, there must be "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered."  Pinney Dock, 838 F.2d at 1465 (quoting Wood, 101 U.S. at 139-40).

The SEC points to no allegation in the amended complaint which establishes when the SEC discovered the facts underlying its claims.  See generally doc. 21, at 38; doc. 23, at 21-24.  Therefore, fraudulent concealment has not been sufficiently alleged, and the SEC cannot rely on it to toll any untimely claims against the defendants.

<u>E. Summary</u>

Claims for civil penalties in this SEC civil enforcement action are governed by Section 2462.  Quinlan, 2010 WL 1565473, at *6; Zacharias, 569 F.3d at 471.  However, to the extent that the SEC seeks to enjoin the defendants from violating or aiding and abetting the violation of the securities laws, or an order directing the defendants to disgorge profits, in order to remedy an alleged past wrong and protect the public from future harm, the five-year statute of limitations of Section 2462 does not apply.  See, e.g., Gabelli, 2010 WL 1253603, at *5;  Power, 525 F.Supp.2d at 426-427;  Jones, 476 F.Supp.2d at 381;  DiBella, 409 F.Supp.2d at 127.

Section 2462 ordinarily requires an action to be brought within five years from the date when the claim "accrued."  Browner, 17 F.3d at 1461-1462.  The court agrees with those courts that have rejected a general "discovery rule," under which the limitations period would not begin until the SEC discovered the facts constituting the violation.  Browner, 17 F.3d at 1462; Williams, 104 F.3d at 240 (distinguishing tolling based on fraudulent concealment).

Federal courts have found that the five-year statute of limitations can be tolled by the fraudulent concealment doctrine.  Williams, 104 F.3d at 240; Power, 525 F.Supp.2d at 424; Jones, 476 F.Supp.2d at 381-382.  See generally Holmberg, 327 U.S. at 397.  In order to plead fraudulent concealment, the SEC must allege that:  1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented the SEC from discovering the cause of action within the limitation period; and 3) until discovery of the cause of action, the SEC exercised due diligence in trying to find out about the cause of action.  Egerer, 556 F.3d at 422; Pinney Dock, 838 F.2d at 1465; Power, 525 F.Supp.2d at 424.  A party invoking the doctrine of fraudulent concealment is held to stringent rules of pleading, and there must be "distinct averments" in the complaint as to the time when the concealment was discovered.  Pinney Dock, 838 F.2d at 1465 (quoting Wood, 101 U.S. at139-140); see also Yuhasz, 341 F.3d at 563.

The SEC points to no allegation in the amended complaint which establishes when the SEC discovered the facts underlying its claims, and therefore the SEC

cannot rely on the doctrine of fraudulent concealment to toll any untimely claims against the defendants.

Finally, because there are unresolved issues of fact which concern the application of the continuing violation doctrine, the court finds it premature to address claims on this basis.  Des Champs, 2009 WL 3068258, at *2; Pentagon Capital, 612 F.Supp.2d at 267; Comverse Tech., 543 F.Supp.2d at 155; Schiffer, 1998 WL 226101, at *3.

## III.  GAAP VIOLATIONS

Many of the SEC's claims are based on alleged violations of Generally Accepted Accounting Principles[2] ("GAAP").  See, e.g., doc. 4, at ¶¶ 19, 40, 43, 47. The failure to follow GAAP is, by itself, insufficient to state a securities fraud claim.  Konkol, 590 F.3d at 400 (quoting In re Comshare Inc. Securities Litig., 183 F.3d 542, 553 (6th Cir. 1999)); Zaluski v. United Am. Healthcare Corp., 527 F.3d 564, 576 (6th Cir. 2008).  "Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."  Chill v. General Elec. Co., 101 F.3d 263, 270 (2d Cir. 1996).

---

[2]  Generally Accepted Accounting Principles ("GAAP") are the official standards adopted by the American Institute of Certified Public Accountants (the "AICPA"), a private professional organization, through three successor groups it established: the Committee on Accounting Procedure, the Accounting Principles Board (the "APB"), and the Financial Accounting Standard Board (the "FASB").  United States v. Ebbers, 458 F.3d 110, 125 n.2 (2d Cir. 2006), cert. denied, 549 U.S. 1274 (2007) (citing Ganino v. Citizens Utilities Co., 228 F.3d 154, 160 n. 4 (2d Cir. 2000)).

Geswein argues that, to properly allege a securities fraud claim based on GAAP non-compliance, the SEC must identify both the provision of GAAP at issue, and how the conduct allegedly violated that provision.  (Doc. 17, at 6, citing cases.)  Although the SEC alleges five categories of fraudulent accounting (see doc. 4, at ¶ 13), Geswein claims that the complaint does not allege violations of any specific accounting standards or GAAP for the second through fifth categories.  (Doc. 17, at 6.)  Morever, Geswein claims that "the SEC has not identified the specific fraudulent practices that allegedly violated GAAP."  Id. at 9.  Krakora makes a similar argument.  See also doc. 16, at 11, 15-16 (five criteria alleged are not found in GAAP).  Geswein claims, without authority in support, that "the failure to allege a GAAP violation is a failure to allege sufficiently that financial statements were false, and without such an allegation, the SEC fails to state a claim..." (Doc. 26, at 3.)

In addition, Geswein asserts that the only accounting standard that the SEC specifically alleges is the SEC's Staff Accounting Bulletin 104 ("SAB 104"), which relates only to "bill and hold" accounting, the first category of the five.  (Doc. 17, at 6, citing doc. 4, at ¶ 21.)  Krakora points out that SAB 104 is not legally binding, but merely meant to provide conceptual guidance, and also that it is not part of GAAP.  (Doc. 16, at 2, 11-15.)

"Unlike a rule promulgated by the SEC pursuant to its ruling-making authority, see 15 U.S.C. § 78w(a), an SEC Staff Accounting Bulletin does not carry

25

with it the force of law." Allen v. Administrative Review Bd., 514 F.3d 468, 478 (5th Cir. 2008); see also Ganino, 228 F.3d at 163 (same).  According to the SEC, Staff Accounting Bulletins

> . . . represent interpretations and practices followed by the Division of Corporation Finance and the Office of the Chief Accountant in administering the disclosure requirements of the Federal securities laws; they are not rules or interpretations of the Commission, nor do they bear official Commission approval.  The Commission's staff issues SABs as a means of informing the financial community of its views on certain matters relating to accounting and disclosure practices.

46 Fed. Reg. 11513 (Staff Accounting Bulletin No. 40) (Feb. 9, 1981).

However, courts have found SABs to provide, for example, "persuasive guidance for evaluating the materiality of an alleged misrepresentation." Ganino, 228 F.3d at 163-164 (discussing SAB 99).  Generally, "SEC regulations provide that financial statements are presumed misleading unless prepared in compliance with GAAP principles." Romine v. Acxiom Corp., 296 F.3d 701, 705 (8th Cir. 2002) (citing 17 C.F.R. § 210.4-01(a)(1)).

The SEC points out that the cases cited by Geswein involve private party cases governed by the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), which are not applicable in SEC enforcement actions.  (Doc. 21, at 5-6, citing SEC v. Falor, No. 1:09CV5644, 2010 WL 3385510, at *3 n.4 (N.D. Ill. Aug. 19, 2010), and SEC v. Shanahan, No. 4:07CV270, 2008 WL 5211978, at *3 n.7 (E.D. Mo. Dec. 12, 2008).)

26

Although SEC enforcement actions are clearly not governed by the standards of the PSLRA, the SEC's complaint must still  meet the particularity requirements of Rule 9(b), namely, it must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Frank , 547 F.3d at 570; see also Tambone, 597 F.3d at 442; Hartop, 2010 WL 4272601, at *6; Power, 525 F.Supp.2d at 422.

The SEC contends that it has alleged with particularity the defendants' fraudulent actions, and the ways in which they falsified Diebold's reports of its financial results.  (Doc. 21, at 5.)  The SEC cites SEC v. Collins & Aikman in support of the contention that the complaint need not cite specific provisions of GAAP which were allegedly violated.  Id., citing SEC v. Collins & Aikman, 524 F.Supp.2d 477, 495 (S.D.N.Y. 2007).  In that case, the court stated:

> . . . Rule 9(b) does not require the court to delve into the minutiae of accounting regulations at the pleading stage.  On the contrary, at this stage, it is sufficient for plaintiff to allege with specificity defendant's fraudulent actions.  Because the SEC has alleged with particularity that Cosgrove intended to falsify C & A's financial statements, Cosgrove has more than adequate notice of the fraudulent activity at issue.

Collins & Aikman, 524 F.Supp.2d at 495.

The court finds that the amended complaint meets the particularity requirements of Rule 9(b).  Although specific claims as raised by the defendants will be addressed, the complaint specifies statements that the SEC contends were

fraudulent, identifies the speaker, states where and when the statements were made, and explains why the statements were fraudulent.  See, e.g., doc. 4, at ¶ 53. The amended complaint should not be dismissed on the basis that the SEC does not identify specific provisions of GAAP that have been allegedly violated.  Collins & Aikman, 524 F.Supp.2d at 495.

## IV.  ALLEGED VIOLATIONS OF SECURITIES ACT AND EXCHANGE ACT

The first count alleges violations of the Securities Act, Section 17(a), 15 U.S.C. § 77q(a), by all defendants.  (Doc. 4, at ¶¶ 112-114.)  The second count alleges violations of the Exchange Act, Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  (Doc. 4, at ¶¶ 115-117.)  The elements which must be established to allege a violation of either are "essentially the same."  SEC. v. Dunn, 587 F.Supp.2d 486, 499 (S.D.N.Y. 2008)

Section 17(a) "is a general prohibition against fraud in the offer or sale of securities," using the instruments of interstate commerce.  Power, 525 F.Supp.2d at 419.  To allege a claim under Sections 17(a), the SEC must allege that the defendants:  "(1) committed a deceptive or manipulative act, or made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device; (2) with scienter; (3) which affected the market for securities or was otherwise in connection with their offer, sale or purchase."

Gabelli, 2010 WL 1253603, at *7 (quoting Power, 525 F.Supp.2d at 419).  See also SEC v George, 426 F.3d 786, 792 (6th Cir. 2005).  Scienter is a necessary element under Section 17(a)(1), but it is not required for liability under §§ 17(a)(2) and 17(a)(3).  Kearns, 691 F.Supp.2d at 614; Power, 525 F.Supp.2d at 419 (citing Aaron v. SEC, 446 U.S. 680, 697 (1980)).

Section 10(b), and Rule 10b-5, prohibit similar conduct in connection with the purchase or sale of a security.  Power, 525 F.Supp.2d at 419.  To state a violation of either § 10(b) or Rule 10b-5, the SEC must allege that a defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities."  Dunn, 587 F.Supp.2d at 498-499 (quoting SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999)).  See also George, 426 F.3d at 792; Gabelli, 2010 WL 1253603, at *7; Power, 525 F.Supp.2d at 419.

In sum, then, proof of scienter is a necessary element under Securities Act § 17(a)(1) and Exchange Act § 10(b) and Rule 10b-5, but it is not required for liability under §§ 17(a)(2) and 17(a)(3).  Kearns, 691 F.Supp.2d at 614; Power, 525 F.Supp.2d at 419 (citing Aaron, 446 U.S. at 697).

### A.  Offer or Sale of Securities

Geswein argues that the first count should be dismissed for failure to state a claim, because the allegations of the complaint "are barren of any reference to any offer or sale of any securities by any of the named defendants or by Diebold itself at

any time." (Doc. 17, at 31.)  Geswein emphasizes that the complaint alleges that the defendants "in connection with the offer or sale of securities" engaged in fraudulent conduct.  (Doc. 17, at 31, quoting doc. 4, Am.Compl., at ¶ 113.)  He contends that this is insufficient as a matter of law because no such offer or sale is alleged, and the statute specifies conduct "in the offer or sale of securities," not "in connection with" such offers or sales.  Id.

Many federal courts draw no distinction between the phrase "in the offer or sale" in  Section 17(a), and the "in connection with the purchase or sale" language of Rule 10b-5.  SEC v. Forman, Civ.No. 07-11151, 2010 WL 2367372, at *7 (D. Mass. June 9, 2010).  The SEC points out that courts routinely use the two phrases interchangeably.  (Doc. 21, at 27.)  See e.g., George, 426 F.3d at 791-792; Power, 525 F.Supp.2d at 419.  The complaint should not be dismissed on this basis.

Geswein points to SEC v. Brown, which ruled to the contrary.  (Doc. 26, at 18, citing SEC v. Brown, 740 F.Supp.2d 148 (D.D.C. 2010).)  In Brown, the Section 17(a) claim was dismissed because there was no allegation that an offer or sale of securities "ever occurred" during the relevant time period.  Brown, 740 F.Supp.2d at 164.  Yet, as Brown recognized,

> The Supreme Court has instructed that the "offer or sale" requirement should be construed broadly so as to encompass fraud in any part of the selling process.  See United States v. Naftalin, 441 U.S. 768, 772–73, 99 S.Ct. 2077, 2081, 60 L.Ed.2d 624 (1979).  As a result, "Section 17(a) has been broadly construed to encompass a wide range of conduct."  SEC v. Softpoint, Inc., 958 F.Supp. 846, 861 (S.D.N.Y. 1997) (collecting cases).  Such conduct typically involves omissions and

misstatements made in securities registration statements.  See, e.g., SEC v. Leffers, 289 Fed.Appx. 449, 451 (2d Cir. 2008).

Brown, 740 F.Supp.2d at 164.  The court does not find Brown to be persuasive as to the point urged by Geswein, and agrees with those courts which construe the "offer or sale" language broadly.  See Forman, 2010 WL 2367372, at *7.

The amended complaint alleges that Diebold's common stock is listed on the New York Stock Exchange.  (Doc. 4, at ¶ 10.)  The court takes judicial notice of the fact that a common stock listed on the NYSE is intended, for the most part, to be sold and exchanged.  See generally Silver v. New York Stock Exchange, 373 U.S. 341, 349-350 (1963) (economic role of NYSE).  The complaint also alleges that Geswein and Krakora were concerned with Diebold's performance vis-a-vis stock analysts' projections.  (Doc. 4, at ¶¶ 11-12.)

## B.  Particularity under Rule 9(b)

More problematic is the overall nature of the complaint itself.  Geswein complains that the SEC has improperly lumped the defendants together, so that the allegations do not notify Geswein of the specific fraudulent acts which form the basis of the complaint against him.  (Doc. 17, at 12.)  Krakora points out that the complaint does not identify which of the factual allegations are intended to support each claim against each defendant.  (Doc. 16, at 17, 23.)  Similarly, Geswein contends that the complaint fails to distinguish which acts by which defendants relate to which specific claims.  (Doc. 17, at 12-13.)  Also, Geswein argues that the complaint "fails to describe what Geswein specifically did, how he did it, or where

31

he did it." Id. at 13.  Geswein gives examples of allegations which he deems

insufficient under Rule 9(b).  Id. at 13-14.

Krakora argues more broadly that the SEC has failed to plead its claims with

specificity, and that the complaint "fails to identify the specific filings it alleges are

misleading or the line items on the financial statements within those filings that

are supposedly misleading..." (Doc. 16, at 2, 5; see also doc. 17, at 10-11.)  The court

does not find that precise level of detail ("line items") is required.  For example,

although Krakora cites SEC v. Conaway, for the proposition that "the SEC must

identify 'each statement within each document that plaintiff alleges amounts to a

misrepresentation,'" (doc. 16, at 19, quoting SEC v. Conaway, No. 2:05CV40263,

2009 WL 1606655, at *1 (E.D. Mich. June 8, 2009)), the authority on which this

statement is based does not support such a reading.  Conaway cites Frank v. Dana

Corp., 547 F.3d at 570, for the "each statement within each document" standard.

However, the cited portion of Frank actually reads:

> Securities fraud claims . . . , as with any fraud claim, must satisfy the
> particularity pleading requirements of Rule 9(b).  Accordingly,
> Plaintiffs' complaint must "(1) specify the statements that the plaintiff
> contends were fraudulent, (2) identify the speaker, (3) state where and
> when the statements were made, and (4) explain why the statements
> were fraudulent."  At a minimum, Plaintiffs must allege the time,
> place and contents of the misrepresentations upon which they relied.

Frank , 547 F.3d at 569-570 (internal citations omitted).  The Supreme Court has

instructed that ordinary pleadings require some "factual enhancement," but not

"detailed factual allegations."  Iqbal, 129 S.Ct. at 1949.

32

However, the court agrees, generally, with the defendants' assessment of the amended complaint.   As noted, the SEC's amended complaint is required to meet the particularity requirements of Civil Rule 9(b), that is, it must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."   Frank , 547 F.3d at 570; see also Tambone, 597 F.3d at 442; Hartop, 2010 WL 4272601, at *6;  Power, 525 F.Supp.2d at 422.  Where a complaint fails to identify specific statements that are allegedly fraudulent, fails to identify the specific speaker, or fails to detail when and where the alleged statements were made, the complaint fails to meet the appropriate pleading standards for fraud under Rule 9(b).  See Yuhasz, 341 F.3d at 564 (failure to identify specific parties or fraudulent acts requires dismissal); Gupta, 10 F.Supp.2d at 883.  Under the post-Twombly standard, a claim will survive a motion to dismiss only if the court finds the claim has "facial plausibility," that is, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949.

While the amended complaint pleads an abundance of factual content (doc. 4, at ¶¶ 1-111), it is unclear how the court is to draw a reasonable inference that a specific defendant may be liable for specific misconduct because of the way that the specific claims of the amended complaint are put forward.

For example, the first claim for relief, as stated in the amended complaint, first incorporates Paragraphs 1 through 111 (virtually the entire factual background).  (Doc. 4, ¶ 112.)  Then, the complaint alleges that the defendants, "by reason of the conduct described above," violated Securities Act Section 17(a).  Id. at ¶¶ 113-114.  The complaint simply paraphrases the statute to allege the violation.  Compare doc. 4, ¶ 113, with 15 U.S.C. § 77q(a).  The first claim for relief does not identify the specific conduct for which any defendant is alleged to be liable, and does not identify a specific violation of a specific provision of Section 17(a).  See generally doc. 4, at ¶¶ 112-114.  The second claim for relief repeats this pattern, incorporating not only the entire factual background, but the first claim for relief as well.  See doc. 4, at ¶¶ 115-117.  Similarly, the third claim for relief incorporates the entire factual background, and incorporates the first and second claims[3] for relief as well.  See doc. 4, at ¶¶ 118-121.

In SEC v. Patel, the court confronted a similar situation.  Quoting from its earlier ruling on a motion to dismiss in that case, the court said:

> Given the way the SEC has stated its claims in Counts I and III –
> incorporating by reference all 187 paragraphs of factual allegations
> and closely paraphrasing the statutes and rule upon which it relies – it
> is difficult to determine whether the alleged fraudulent conduct
> underlying those claims consists of an untrue statement of fact, the

---

[3] Leading to the allegation, by inference, that violations of Section 17(a) of the Securities Act (doc. 4, at ¶ 114) and Section 10(b) of the Exchange Act (doc. 4, ¶ 117) result in a violation of Section 13(b)(5) of the Exchange Act.  (Doc. 4, ¶¶ 118, 121.) The court is doubtful that the SEC actually means to allege this.

omission of a fact necessary to make a prior statement not misleading, or some other manipulative or deceptive act.

SEC v. Patel, Civ.No. 07-CV-39, 2009 WL 2015794, at *1 (D. N.H. July 7, 2009). The court complained that, even after the complaint was amended, "none of the claims specifically identifies the conduct for which the SEC seeks to hold each defendant liable. " Id.

The Patel court pointed out that,

. . . to reasonably determine that any particular claim should not be dismissed would require the court to first comb the complaint in search of factual support for each element of the multiple claims pled as to each defendant, and then evaluate the adequacy of that factual support.  That is, of course, plaintiff's job in the first instance, not the court's.

Patel, 2009 WL 2015794, at *2.

In SEC v. Fraser, the court noted that complaints that rely on "shotgun" pleading (complaints in which every antecedent allegation is incorporated by reference into each subsequent claim for relief), or "puzzle" pleading (which require the defendant and the court to match factual statements to misconduct), do not meet the particularity requirements of Rule 9(b).  SEC v. Fraser, No. CV-09-00443, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009).  The court noted that such practices result in an improper pleading format for a complex securities action.  Id.

The Fraser  court noted that the amended complaint before it:

. . . incorporates every factual paragraph into each claim section, and it makes no attempt to lay out which conduct constitutes the violations alleged.  Rather, the claims sections simply paraphrase or quote the language of the statutes and rules, leaving Defendants (and the Court)

35

> with the task of combing the Complaint and inferring, rightly or
> wrongly, what specific conduct the SEC intended to assert as a
> violation.  Given the multiple defendants at issue in each claim, the
> lack of clarity about which actions apply to each claim, and the general
> vagueness of the factual allegations, the Complaint does not satisfy
> Rule 9(b) . . .

Fraser, 2009 WL 2450508, at *14.  The court found that the SEC failed to

adequately plead the claims at issue, and dismissed those specific claims.  Id. at

*14, *16.

Some courts have found that a brief in opposition to a motion to dismiss may

be used to "clarify" allegations in the complaint "whose meaning is unclear."  Gulf

Coast Hotel-Motel Ass'n v. Mississippi Gulf Coast Golf Course Ass'n, No.

1:08CV1430, 2010 WL 3168032, at *7 (S.D. Miss. Aug. 10, 2010) (citing Pegram v.

Herdrich, 530 U.S. 211, 230 n.10 (2000)); Orton v. Johnny's Lunch Franchise, LLC,

No. 10-11013, 2010 WL 2854303, at *3 n.4 (E.D. Mich. July 20, 2010) (citing

Pegram).  However, there is a distinction between "clarifying" unclear allegations,

and recasting the complaint to cure omissions.  Gulf Coast, 2010 WL 3168032, at

*7; Zimmerman v. Logemann, No. 09-cv-210, 2009 WL 4407205, at *5 (W.D. Wis.

Nov. 30, 2009).  The SEC cannot amend its Amended Complaint through arguments

in its briefs in opposition.  Zimmerman, 2009 WL 4407205, at *5 (citing Bissessur v.

Indiana Univ. Bd. of Trustees, 581 F.3d 599, 603 (7th Cir. 2009)); Hurst v. St.

George Community Consol. Sch. Dist. No. 258, No. 08-CV-2182,  2009 WL 1363408,

at *4 (C.D. Ill. May 13, 2009).  The court will consider the SEC's arguments with

that distinction in mind.

Here, the SEC responds to the Rule 9(b) arguments, in part, by noting that the complaint need not present a defendant with all the evidence against him, and that the SEC is not required to present the defendants with all the evidentiary support for its case.  (Doc. 21, at 10.)  The SEC argues that it is sufficient to specify the financial statements alleged to be misleading, the manner in which they are alleged to be misleading, and the categories of information that are alleged to be false and misleading.  Id. at 11.  The SEC contends, for example, that it is not necessary for a complaint to allege the specific transactions underlying claims of improper bill-and-hold accounting.  Id. at 12.

Addressing the arguments that the complaint fails to support the claims for relief with specifics, the SEC lists "numerous detailed examples of Geswein's specific misrepresentations and omissions," which, as it points out, are contained in the factual portion of the amended complaint.  (Doc. 21, at 16-18.)  The SEC believes that these "many examples of Geswein's fraudulent misrepresentations and omissions satisfy the particularity requirements of Rule 9(b)."  (Doc. 21, at 18.)  Of course, as mentioned earlier, these "many examples" were only incorporated into the specific claims for relief through wholesale "incorporation by reference."  See generally Fraser, 2009 WL 2450508, at *14; Patel, 2009 WL 2015794, at *1.

The SEC asserts that the Sixth Circuit has found it sufficient to cite specific examples of fraud, rather than each individual occurrence.  (Doc. 22, at 22-23, citing

cases).  Krakora disagrees, and claims that the SEC cannot plead by example.
(Doc. 16, at 22.)  The Sixth Circuit has found that it is not required to plead every
specific instance of fraud, where the allegations encompass fraud over a substantial
period of time.  U.S. ex rel. Bledsoe v. Community Health Sys., Inc., 501 F.3d 493,
509-511 (6th Cir. 2007).  Where the plaintiff pleads a complex fraudulent scheme
with particularity, and provides specific examples, the plaintiff may proceed to
discovery on the entire fraudulent scheme.  Bledsoe, 501 F.3d at 510.  To protect the
policies underlying Rule 9(b), the Sixth Circuit held that the examples provided will
only support the more generalized allegations of fraud to the extent that the
examples are representative samples of the broader class.  Bledsoe, 501 F.3d at 510.
See also United States ex rel. Marlar v. BWXT Y-12, LLC, 525 F.3d 439, 444-445
(6th Cir. 2008) (complaint must provide examples of specific fraudulent conduct
that are representative samples).  The examples pled with specificity should include
"general time frame, substantive content, and relation to the allegedly fraudulent
scheme."  Bledsoe, 501 F.3d at 511.

In United States ex rel. SNAPP, Inc. v. Ford Motor Co., the Sixth Circuit
found that the plaintiff had alleged fraudulent statements with sufficient
particularity.  United States ex rel. SNAPP, Inc. v. Ford Motor Co., 532 F.3d 496
(6th Cir. 2008).  The complaint set out the particulars of how the fraudulent scheme
was carried out.  It was alleged that "these fraudulent misrepresentations were
made in particular reports filed annually with the federal government," and the

plaintiff provided copies of these reports which were included in the record.  "In identifying these reports, [plaintiff] states with particularity 'the time, place, and content of the alleged misrepresentation.'  Accordingly, [plaintiff] has met its burden of identifying false or fraudulent statements made by [defendant] with particularity."  SNAPP, 532 F.3d at 505-506.

Geswein claims that the complaint fails to allege the who, what, when, where and how of his alleged misconduct.  (Doc. 17, at 13-22.)  In response, the SEC provides numerous citations to the amended complaint which support those claims against the defendants.  See, e.g., doc. 21, at 15-23, as to Geswein.  Geswein counters that these allegations are missing information and lack sufficient detail.  (Doc. 26, at 7-9).

For example,  the SEC points to Paragraph 74 of the amended complaint, which "alleges that Geswein signed false forms[4] on February 27, 2004, and August 12, 2005, which misstated 2003 earnings by at least $16 million as a result of improper accruals (the impropriety of which is explained in [doc. 4], ¶¶ 67-73, which also allege Geswein's scienter)."  (Doc. 21, at 17.)  Geswein responds to this example by arguing that the allegations "do not identify the specific statement made by Geswein.  Nor do they explain why the 2003 earnings were misstated by $16 million."  (Doc. 26, at 8.)

---

[4]  The amended complaint specifies that the forms are Diebold's Form 10-K for 2003, and the 2005 restatement of Diebold's income for 2003.  (Doc. 4, ¶ 74.)

The examples provided by the SEC include the date, substantive content, and relation to the alleged fraud.  The court finds that the complaint provides sufficient examples of specific fraudulent conduct to satisfactorily state a claim under Rule 9(b).  See, e.g., SNAPP, 532 F.3d at 505-506; Bledsoe, 501 F.3d at 509-511.

### C.  Elements of Claim

The first element concerns the making of "material" misrepresentations.  "A statement is material if, in the view of a reasonable investor, it would have significantly altered the total mix of information available to the company." SEC v. Fisher, No. 07-CV-12552, 2008 WL 822135, at *2 (E.D. Mich. Mar. 27, 2008) (citing Basic, Inc. v. Levinson, 485 U.S. 224, 231-232 (1998)).

Krakora argues that the complaint does not specifically allege that the purported misstatements were material.  (Doc. 16, at 26-27.)  He contends that the allegations concerning materiality are conclusory.  Id. at 27.

The SEC responds that materiality is a fact question, inappropriate for determination on a motion to dismiss.  (Doc. 22, at 29, citing cases.)  The Supreme Court has found that "materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information," which is a fact-specific inquiry.  Basic Inc., 485 U.S. at 240.  Therefore, a materiality determination is usually not a matter for dismissal for failure to state a claim.  In re Adams Golf, Inc. Securities Litig., 381 F.3d 267, 274-275 (3d Cir. 2004); SEC v. Buntrock, No. 02-C-2180, 2004 WL 1179423, at *4 (N.D. Ill. May 25, 2004), aff'd,

557 F.3d 736 (7th Cir. 2009).  Only where "the alleged misrepresentations . . . are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality" is dismissal appropriate.  Adams Golf, 381 F.3d at 275 (quoting Shapiro v. UJB Fin. Corp., 964 F.2d 272, 281 (3d Cir. 1992)).  The court cannot find the allegations here "so obviously unimportant."

The SEC also argues that the specific allegations of the complaint satisfy the first element of the claim(s) by showing materiality:

> For example, Geswein signed Forms 10-K in 2004 and 2005 that misrepresented 2003 income by $29.5 million, or over 11%. [Am.Compl., at ¶¶ 48, 51 & 53.]  Also, the manipulation of the various accrual accounts caused a $16 million overstatement of pre-tax earnings [Am.Compl., at ¶ 73], or over 6%.  In a number of other specific instances, Geswein overstated Diebold's earnings so as to create the false impression that Diebold had met quarterly projections, which was a material fact.

(Doc. 21, at 26.)  The SEC provides additional examples in response to Krakora's motion.  (Doc. 22, at 29-30.)

As to the second element, the SEC asserts that the misrepresentations and omissions were in connection with the purchase or sale, or in the offer or sale, of securities.  (Doc. 26, at 26-27.)  As noted above, courts use these phrases to cover the same type of conduct, including filing reports with the SEC.  (Doc. 26, at 27, citing Forman, 2010 WL 2367372, at *7, and other cases.)

Third, the SEC contends that the defendants acted with scienter, and that scienter need only be alleged generally.  (Doc. 26, at 28, citing cases.)  Geswein argues that the first claim (as well as the second) should be dismissed for failure to

41

allege scienter.  (Doc. 17, at 32-33.)  He argues that  scienter is an essential element of the Section 17(a)(1) and Rule 10b-5 claims.  Id. at 32.  See generally Power, 525 F.Supp.2d at 419.

The SEC points out that scienter is an element of only certain claims.  (Doc. 22, at 31.)  The Supreme Court has found that "the language of § 17(a) requires scienter under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)."  Aaron, 446 U.S. at 697; see also Kearns, 691 F.Supp.2d at 614.  To state a claim under Sect. 10(b)) and Rule 10b-5, scienter must be alleged as well.  Comshare, 183 F.3d at 548; Power, 525 F.Supp.2d at 419.  (On the other hand, under Section 13 of the Exchange Act, and related regulations, scienter is not an element of a civil claim.  SEC v. McNulty, 137 F.3d 732, 740-741 (2d Cir. 1998), cert. denied, 525 U.S. 931 (1998); SEC v. Stanard, No. 06 Civ. 7736, 2009 WL 196023, at *31 (S.D.N.Y. Jan. 27, 2009); SEC v. Wills, 472 F.Supp. 1250, 1268 (D.D.C. 1978).)

The presence of scienter, where required, is crucial because, as mentioned earlier, the mere failure to follow GAAP alone is insufficient to state a claim.  Konkol, 590 F.3d at 400.  Allegations of violations of GAAP or SEC regulations, without fraudulent intent, are not sufficient to state a securities fraud claim.  Chill, 101 F.3d at 270.

Scienter is defined as a "mental state embracing intent to deceive, manipulate, or defraud."  Fisher, 2008 WL 822135, at *2 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 2 (1976)); SEC v. Orr, No. 04-74702,  2006 WL

542986, at *9 (E.D. Mich. Mar. 6, 2006).  A defendant with scienter  "knew that the representations they made to investors were false or were reckless in disregarding a substantial risk that they were false."  Falor, 2010 WL 3385510, at *3 (quoting SEC v. Lyttle, 538 F.3d 601, 603 (7th Cir. 2008)).

As such, some courts had reasoned that, because Rule 9(b) states that "conditions of a person's mind may be alleged generally," the SEC may allege scienter generally.  See, e.g., SEC v. Berry, 580 F.Supp.2d 911, 920 (N.D. Cal. 2008); Fisher, 2008 WL 822135, at *2.  Other courts, while recognizing that state of mind may be pleaded generally under Rule 9(b), hold that "the complaint must provide a sufficient factual basis for finding scienter."  Falor, 2010 WL 3385510, at *3.  The court finds that this view is more consonant with the Supreme Court's post-Twombly standard, under which "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. 554).

In the Second Circuit, for example, the pleading standard for scienter is satisfied "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Power, 525 F.Supp.2d at 421 (quoting Ganino, 228 F.3d at 168-169).  Other courts have found that "[p]leading the who, what, when, where, and how with sufficient particularity to satisfy Rule 9(b) will generally be sufficient to support the scienter requirement."

Falor, 2010 WL 3385510, at *3 (quoting SEC v. Black, No. 04 C 7377, 2005 WL 1498893, at *3 (N.D. Ill. June 17, 2005)).

The SEC responds that the amended complaint does allege facts showing scienter.  (Doc. 21, at 28-29, citing reference to Am.Compl.)  For example, the SEC alleges that Geswein and Krakora encouraged employees to improperly convert orders to "bill-and hold" transactions, and improperly recognize revenue on certain transactions, and that Geswein "knew or was reckless[5] in not knowing" that such revenue could not properly be recognized in that quarter.  (Doc. 4, at ¶¶ 27, 32-33.)  Also, it is alleged that, on Mar. 4, 2005, Geswein signed Diebold's Form 10-K for 2004, and that he "knew or was reckless in not knowing" that the financial figures reported "were materially false and misleading because, among other things, they included prematurely recognized revenue."  (Doc. 4, at ¶ 35.)  Likewise, it is alleged that:

> Geswein and Krakora knowingly or recklessly made misrepresentations or omissions of material fact when they signed Diebold's Forms 10-K for the years 2003 and 2004 (signed by Geswein and Krakora), the Forms 10-K for the years 2005 and 2006 (signed by

---

[5]  Negligence alone on the part of a defendant cannot support a finding of scienter.  Konkol, 590 F.3d at 396 (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193, 200-201 (1976)).  Scienter may be established through a showing of recklessness, which is "highly unreasonable conduct which is an extreme departure from the standards of ordinary care."  Konkol, 590 F.3d at 396;  George, 426 F.3d at 792;  Orr, 2006 WL 542986, at *9.  In addition to intentional conduct, recklessness is a sufficiently culpable state of mind to support a finding of liability under Section 10(b) and Rule 10b-5.  Konkol, 590 F.3d at 396;  Fisher, 2008 WL 822135, at *2 (citing SEC v. Blavin, 760 F.2d 706, 711 (6th Cir. 1985)).

Krakora), and each of Diebold's Form 10-Q reports covering the
quarterly periods within those years and the first quarter of 2007.

(Doc. 4, at ¶ 51.)  The SEC points to other examples as well.  (Doc. 21, at 28-29.)

Krakora contends that, while state of mind may be alleged generally under

Rule 9(b), "many courts have required plaintiffs to allege facts that give rise to a

'strong inference of fraudulent intent.'"  (Doc. 16, at 27, citing cases.)  As the SEC

points out, that standard applies in PSLRA cases, and is not applicable in SEC

enforcement actions.  (Doc. 22, at 33-34.)  See generally  15 U.S.C. § 78u-4(b)(2)(in

any private action, complaint shall "state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind"); Falor,

2010 WL 3385510, at *3 n.4.  The SEC is not required to allege "facts that give rise

to a 'strong inference of fraudulent intent.'"

The court finds that the SEC has sufficiently alleged scienter as to Geswein

and Krakora.  In summary, the court finds that the amended complaint, although

poorly drafted, pleads sufficient factual content to allow the court to draw the

reasonable inference that Geswein and Krakora may be liable for the misconduct

alleged in the first and second counts.  See generally Iqbal, 129 S.Ct. at 1949.


V.  ALLEGED VIOLATIONS OF SECT. 13(b)(5), EXCHANGE ACT

The third count alleges violations of the Exchange Act, Section 13(b)(5), 15

U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.  (Doc. 4, at ¶¶ 118-

121.)  These allegations cover circumvention or failure to implement a system of

internal controls, or falsifying books, records, or documents.  (Doc. 17, at 33; doc. 21, at 29.)

Geswein asserts that the third claim should be dismissed, because "the SEC alleges no facts whatsoever about internal controls, much less that Geswein circumvented or failed to implement any such controls, and it does not allege that Geswein knowingly falsified any records."  (Doc. 17, at 33.)  Krakora likewise argues that the complaint fails to allege that he circumvented Diebold's system of internal accounting controls.  (Doc. 16, at 32.)

In response, the SEC points to allegations that Geswein and Krakora misled external auditors "by making materially false and misleading statements and omissions in connection with the quarterly reviews and annual audits of the financial statements."  (Doc. 21, at 29-30; citing doc. 4, at ¶¶ 101-104, etc.; doc. 22, at 34-35.)  The complaint cites as examples specific letters to the auditors, signed and sent by Geswein and Krakora.  (Doc. 4, at ¶¶ 102-103.)  In addition, the complaint alleges that Geswein and Krakora failed to disclose fraudulent activities, of which they were aware, to an internal quarterly procedure used to certify Diebold's financial reports.  Id. at ¶ 106(c).

The SEC cites SEC v. Lucent Tech., Inc., and SEC v. Retail Pro, Inc., in support.  (Doc. 21, at 29.)  In Retail Pro, the court found that "[e]vidence showing that a person misled company auditors can support a claim that the person knowingly circumvented a company's system of internal accounting controls."  SEC

v. Retail Pro, Inc., No. 08CV1620, 2010 WL 1444993, at *3 (S.D. Cal. April 9, 2010)

(citing SEC v. Shapiro, No. 4:05CV364, 2008 WL 819945, at *6 (E.D. Tex. March 25,

2008), and SEC v. Solucorp Indus., 274 F.Supp.2d 379, 421 (S.D.N.Y. 2003)).

In Lucent, the court found that the allegation that the defendant lied to the

company's chief accountant about the existence of side agreements sufficiently

supported a claim that the defendant knowingly circumvented Lucent's system of

internal accounting controls and that she knowingly caused Lucent's books and

records to be falsified.  SEC v. Lucent Tech., Inc., No. Civ. 04-2315, 2005 WL

1683741, at *2 (D. N.J. July 18, 2005).  The court does not find Geswein's attempts

to distinguish Lucent and Retail Pro to be persuasive.  See generally doc. 26, at 20-

21.

The court finds that the SEC has sufficiently alleged violations of Section

13(b)(5) and Rule 13b2-1 against Geswein and Krakora.


V.  ALLEGED VIOLATIONS OF RULE 13b2-2, EXCHANGE ACT

The fourth claim for relief alleges violations of Exchange Act Rule 13b2-2, 17

C.F.R. § 240.13b2-2, which covers misrepresentations to accountants and auditors,

against defendants Geswein and Krakora only.  (Doc. 4, at ¶¶ 122-124.)

Geswein contends that the claim should be dismissed because the SEC has

not alleged that he was aware that Diebold's financial statements failed to comply

with GAAP, has not alleged any fraud, or any fraud of which Geswein had knowledge.  (Doc. 17, at 34.)

The SEC responds that the amended complaint alleges "that Geswein's fraudulent practices violated GAAP, that this caused the material misstatement of revenues and earnings, and those false figures were included in the Forms 10-K and 10-Q (which include financial statements) that Geswein signed.  These are sufficient allegations that the Forms 10-K and 10-Q violated GAAP and that Geswein thus lied when he signed letters to the auditors saying otherwise."  (Doc. 21, at 30.)  In support, the SEC cites to numerous allegations in the complaint, alleging that Geswein  and Krakora knew or were reckless in not knowing that various practices were in violation of GAAP, and were false and misleading.  See doc. 21, at 30 n.20.  In addition, the complaint alleges that Geswein and Krakora signed and sent to auditors numerous specific false management representation letters regarding Diebold's quarterly reports, annual reports, and financial statements.  (Doc. 4, at ¶¶ 102-103.)

There is a violation of Rule 13b2-2 where an officer signs a letter to auditors representing that all material transactions have been properly recorded in the accounting records underlying the company's financial statements, and he knew that those statements contained material misrepresentations and omissions.  SEC v. Quinlan, No. 02-60082, 2008 WL 4852904, at *8 (E.D. Mich. Nov. 7, 2008), aff'd, No. 08-2619, 2010 WL 1565473 (6th Cir. Apr. 21, 2010).

The court finds that the SEC has sufficiently alleged violations of Rule 13b2-2 against Geswein and Krakora.

## VI.  ALLEGED VIOLATIONS OF RULE 13a-14, EXCHANGE ACT

The fifth claim for relief alleges violations of Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14, against defendants Geswein and Krakora only.  (Doc. 4, at ¶¶ 125-128.)  The Rule concerns personal certifications stating that Geswein and Krakora, as officers, have reviewed the periodic reports containing financial statements which are filed with the SEC, and that, based on their knowledge, the reports do not contain any untrue or misleading statements (or omissions) of material fact, and that the reports fairly present the financial condition of the company.

Geswein and Krakora both contend that the fifth claim should be dismissed because it is not independently actionable, and Geswein for the additional reason that the SEC has not alleged that the certifications were incorrect.  (Doc. 17, at 34, citing SEC v. Black, No. 04CV7377, 2008 WL 4394891, at *16-*17 (N.D. Ill. Sept. 24, 2008); doc. 16, at 33, citing Black.)

The view that Rule 13a–14 does not establish a separate cause of action for an SEC enforcement proceeding appears to be a minority view.  In SEC v. Brown, the court stated that "SEC claims brought under Rule 13a–14 are routinely permitted."  Brown, 740 F.Supp.2d at 164 (citing cases).  See also SEC v.

49

Fuhlendorf, No. C09-1292, 2011 WL 999221, at *9 (W.D. Wash. Mar. 17, 2011)

(SEC authorized to bring claim to enforce its rules); SEC v. Das, No. 8:10CV102,

2010 WL 4615336, at *10 (D. Neb. Nov. 4, 2010) (rejecting Black); but see SEC v.

Mozilo, No. CV 09-3994, 2010 WL 3656068, at *21 (C.D. Cal. Sept. 16, 2010)

(following Black).

The Brown court pointed out that "authority for the [Black] court's holding

consisted of two rulings that there was no right of action under Rule 13a–14 for

claims brought by private investors."  Brown, 740 F.Supp.2d at 165 (emphasis

added); see, e.g., Steinberg v. BPO Management Serv., Inc., No. 3:09CV02291, 2010

WL 1330971, at *11 (N.D. Tex. Mar. 12, 2010) (no private right of action).  The

court noted that "the securities laws raise 'distinct' statutory interpretation

questions" which distinguish private actions.  Brown, 740 F.Supp.2d at 165 (citing

SEC v. Kelly, 545 F.Supp.2d 808, 813 (N.D. Ill. 2008)).

The SEC is authorized by statute to bring an action for an injunction, an

officer/director bar, and money penalties in a civil action, where the SEC believes

there is a violation of the securities statutes, or the SEC's rules or regulations.  15

U.S.C. § 78u(d)(1).  Therefore, this court agrees with the majority view, that the

SEC may bring allegations of violations of Exchange Act Rule 13a-14, 17 C.F.R. §

240.13a-14, and the fifth claim should not be dismissed on that basis.

The SEC points out that the specific certifications which are the basis for this

action are alleged in the amended complaint.  (Doc. 21, at 30, citing doc. 4,

50

Am.Compl., at ¶ 126; and doc. 21, at 31 n.23.)  For example, the complaint alleges

that Geswein certified Diebold's 2003 Form 10-K, whereas Diebold's statement of

earnings for 2003, as included in its Form 10-K for 2003, were allegedly "materially

false and misleading."  (Doc. 4, at ¶¶ 126, 74; see also, e.g., ¶¶ 51, 53.)

The court finds that the SEC has authority to bring an enforcement action

under Rule 13a-14, and has sufficiently alleged violations of Rule 13a-14 against

Geswein and Krakora.


## VII.  AIDING & ABETTING VIOLATIONS OF SECT. 13, EXCHANGE ACT

The sixth count alleges that the three defendants aided and abetted Diebold's

violations of the Exchange Act, Section 13(a), 15 U.S.C. § 78m(a), and Rules 12b-20,

13a-1, 13a-11, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and

240.1313a-13.  (Doc. 4, at ¶¶ 129-132.)

The seventh count alleges that the defendants aided and abetted Diebold's

violations of the Exchange Act, Sections 13(b)(2)(A), and 13(b)(2)(B), 15 U.S.C. §§

78m(b)(2)(A), and 78m(b)(2)(B).  (Doc. 4, at ¶¶ 133-136.)

A claim of aiding and abetting securities fraud has three elements: "(1) the

existence of a securities law violation by the primary party; (2) knowledge of this

violation on the part of the aider and abettor; and (3) substantial assistance by the

aider and abettor in the achievement of the primary violation."  Jones, 476

F.Supp.2d at 385.  See also  SEC v. Washington County Utility Dist., 676 F.2d 218, 224 (6th Cir. 1982).

Geswein contends that both the sixth and seventh claims should be dismissed, because the SEC has failed to properly allege any GAAP violations. (Doc. 17, at 34-35.)  Krakora similarly urges dismissal because the complaint fails to state a claim for a primary violation.  (Doc. 16, at 33-34.)  The court has already found that the amended complaint should not be dismissed on the basis that the SEC does not identify specific provisions of GAAP that have been allegedly violated. See Collins & Aikman, 524 F.Supp.2d at 495.  The sixth and seventh claims should not be dismissed on this basis.

## VIII.  ALLEGED VIOLATION OF SECT. 304, SARBANES-OXLEY ACT

The final, eighth, claim for relief is that Geswein and Krakora failed to make required reimbursements, in violation of Section 304 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7243.  (Doc. 4, at ¶¶ 137-145.)

Geswein argues that this claim should be dismissed for two reasons:  (1) the statute is unconstitutional, and (2) the SEC has failed to state the elements of the claim.  (Doc. 17, at 35.)

Krakora argues that Section 304, as applied in past cases by the SEC, is a strict liability statute, which leads to punitive forfeitures, unrelated to personal

culpability, and should be construed strictly.  (Doc. 16, at 34-35.)  He also argues that the elements of the claim have not been adequately alleged.  Id. at 35-36.

## A.  Elements of Section 304

Section 304 requires that, if Diebold had to prepare an accounting restatement because of its material noncompliance with financial-reporting securities laws, and if that noncompliance was caused by Diebold's misconduct, then the CEO or CFO must provide certain reimbursement to Deibold.  SEC v. Jenkins, 718 F.Supp.2d 1070, 1073 (D. Ariz. 2010) (citing 15 U.S.C. § 7243(a)).  Under the Act, such reimbursement includes any bonuses, incentive-based, and equity-based compensation received during the twelve-month period following the first improper public issuance or filing.  Id.

Krakora contends that the complaint does not allege the Diebold was "required" to prepare an accounting restatement.  (Doc. 16, at 36.)  The amended complaint does allege that "Diebold was required to prepare an accounting restatement of its . . . financial statements due to the material noncompliance of Diebold, as a result of misconduct, with financial reporting requirements under the securities laws..."  (Doc. 4, at ¶¶ 138, 142.)

This court does not find that the word "required" is limited to actions compelled by the SEC or another agency.  A company may be "required" to restate its financials in order to maintain proper compliance with GAAP.  See, e.g., Barrie v. Intervoice-Brite, Inc., 397 F.3d 249, 257 (5th Cir. 2005) (discussing SAB 101).

The Shanahan case relied on by Krakora is distinguishable, because in that case the defendant argued that Sect. 304 did not apply, since the company never restated its financial statements, although the SEC contended it was "required" to do so.  See SEC v. Shanahan, 624 F.Supp.2d 1072, 1078 (E.D. Mo. 2008).  Here, there was a restatement.

Krakora also contends that the complaint fails to properly allege misconduct. (Doc. 16, at 36-37.)  Specifically, "the SEC has failed to sufficiently allege that Diebold's 2008 restatement resulted from earlier intentional misconduct."  Id. at 37. The SEC responds by noting that the complaint "amply details the [alleged] misconduct by Diebold and its officers," and pointing to allegations that the Sept. 2008 restatement corrected previous "improper, and in many instances fraudulent, accounting practices."  (Doc. 22, at 38, citing doc. 4, at ¶ 98.)

Geswein contends that "the SEC critically fails to allege the first public issuance" of Diebold's 2003 and 2004 financial statements, which is fatal to its claim.  (Doc. 17, at 39.)  Krakora makes a similar argument, arguing in addition that the SEC improperly seeks multiple forfeitures.  (Doc. 16, at 37-39.)

The case relied on by Krakora for the latter point is not dispositive, because the statement highlighted was dicta. See SEC v. Mercury Interactive, LLC, No. C 07-2822, 2009 WL 2984769, at *7 (N.D. Cal. Sept. 15, 2009).  Although the court said it did not agree with the SEC's reading of the statute, it did not rule on that basis.  Rather, the court dismissed the claim because "the SEC has not identified

adequately a 'first public issuance or filing' sufficient to identify a twelve-month period" for which the defendants would be obligated to reimburse." Id.

The SEC points out that the claim is based on the filing of false financial statements for 2003 and 2004, "and the [Form] 10-Qs and 10-Ks filed subsequent to each act of wrongdoing" throughout 2003 and 2004 represented the first public issuance of a financial statement embodying that misconduct. (Doc. 21, at 32; see, e.g., doc. 4, at ¶¶ 51, 53.) The eighth claim should not be dismissed on this basis.

### B.  Constitutionality

Krakora and Geswein claim that Section 304 is unconstitutional because it may violate the Due Process Clause of the Fifth Amendment, and the Excessive Fines Clause of the Eighth Amendment. (Doc. 16, at 39; doc. 17, at 35-39.) The SEC responds that the statute is constitutional. (Doc. 21, at 33-35.)

Duly enacted congressional statutes are entitled to a presumption of constitutionality. United States v. Napier, 233 F.3d 394, 399 (6th Cir. 2000); United States v. Scrushy, No. CR-03-BE-0530-S, 2004 WL 2713262, at *2 (N.D. Ala. Nov. 23, 2004). "Every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1105 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996) (quoting Chapman v. United States, 500 U.S. 453, 464 (1991)). A congressional enactment will be invalidated only upon a plain showing that Congress has exceeded its

constitutional bounds. Napier, 233 F.3d at 399 (quoting United States v. Morrison, 529 U.S. 598 (2000)). The power to define federal crimes lies with Congress, not the courts. Scrushy, 2004 WL 2713262, at *2 (citing United States v. Lanier, 520 U.S. 259, 267 n.6 (1997)).

As to the alleged due process violation, Krakora contends that any disgorgement of his compensation based on what occurred in 2005 and 2006 "would be grossly disproportional to the gravity of the offense," and would be unconstitutional. (Doc. 16, at 39.) Similarly, Geswein complains that Section 304 is "entirely disconnected from the essential due process requirement of proportionate culpability." (Doc. 17, at 37.) Geswein claims that, under Section 304, a person may have to "pay substantial penalties" regardless of the degree of culpability. Thus, "the absence in [Sect.] 304 of any culpability requirement, any relationship between the wrongdoing and the assessment and amount of the penalty, and any standards for avoiding arbitrary and excessive penalties, renders [Sect.] 304 unconstitutional." Id. Geswein also argues that Section 304 violates the "excessive fines" clause, because a reimbursement not linked to wrongdoing constitutes a "penalty assessment." (Doc. 17, at 37-38.)

Geswein concedes that "CEOs and CFOs often receive bonuses disconnected from a company's financial performance," in other words, being compensated or rewarded, regardless of the success of the company, and not necessarily due to their personal achievements. (Doc. 17, at 38.) Clearly, this is not unconstitutional.

However, if an executive is required to reimburse the company for "bonuses disconnected from a company's financial performance," where the financial performance of the company was misstated, Geswein urges the court to characterize this as an unconstitutional "penalty."  (Doc. 17, at 37-38.)

The SEC responds that the statute does not impose a penalty.  (Doc. 21, at 33.)  Rather, the statute provides that the CEO and CFO "shall reimburse" the company for any bonuses, incentive-based, and equity-based compensation received, 15 U.S.C. § 7243(a), regardless of whether the bonuses and compensation may or may not have been substantial, arbitrary or excessive.  The SEC argues that, where the effect of an SEC action is to restore the status quo ante, such as through restitution or disgorgement, the action should be deemed remedial rather than punitive.  (Doc. 21, at 33, citing Johnson v. SEC, 87 F.3d 484, 491 (D.C. Cir. 1996).) The SEC contends that "Section 304 does not exact fines, but instead only serves to vindicate the right of an issuer to obtain reimbursement."  (Doc. 21, at 34.)

The SEC argues that Section 304 "provides an incentive for CEOs and CFOs to be rigorous in their creation and certification of internal controls."  (Doc. 21, at 33, quoting Jenkins, 718 F.Supp.2d at 1077.)  The Jenkins court went on to observe:

> To the extent that the statute is designed to promote vigilance in such officers, it would appear that it might have aspects that could be described as either remedial or punitive, or both.  It is not presently clear, however, even if an application of the statute might be punitive, that, under the facts pleaded here, the plain meaning of the statute is incapable of a constitutional application either on its face, or as applied.

57

Jenkins, 718 F.Supp.2d at 1077.

The fact "that defendants may suffer some loss is not sufficient to render a sanction punitive." Zacharias, 569 F.3d at 471 (citing Johnson, 87 F.3d at 488). The Jenkins court recognized that whether the statue should be considered remedial or punitive was unclear, and depended on the "development of the nature of the recovery sought by the SEC against [the defendant] in light of the facts of this case." Jenkins, 718 F.Supp.2d at 1076.  The court decided against dismissing on constitutional grounds, finding that,

> . . . even if these constitutional concerns have merit, the facts necessary to decide these constitutional issues cannot be decided on a motion to dismiss.  And the allegation of potential constitutional problems depending on the amount of recovery sought is not dispositive in deciding whether the SEC has even stated a claim, particularly given that the text of the statute allows the SEC to seek reimbursement from a [defendant] who is unaware of the issuer's misconduct.

Jenkins, 718 F.Supp.2d at 1076.

The SEC here specifically alleges that Geswein and Krakora were aware of, and indeed were participants in, the financial misconduct.  The court would not find Section 304 unconstitutional on its face.  The court finds Jenkins persuasive, and the motion to dismiss should not be granted on constitutional grounds, at this point, without prejudice to renew.

58

## IX.  INJUNCTIVE RELIEF

Geswein contends that the SEC fails to allege any need for an injunction. (Doc. 17, at 39-40.)  It is true, as he states, that the SEC will have to show a reasonable and substantial likelihood that the defendants, if not enjoined, would violate the securities laws in the future.  See generally  Washington County, 676 F.2d at 227.  The SEC has provided case law, which the court finds persuasive, that it would be premature to dismiss a request for injunctive relief at this juncture. (Doc. 21, at 39-40.)  This issue should await resolution until after the SEC has had the opportunity to conduct discovery and to present evidence as to defendants' propensity to engage in future violations.  See, e.g., SEC v. Hopper, No. Civ.A. H-04-1054, 2006 WL 778640, at *16 (S.D. Tex. Mar. 24, 2006); SEC v. C. Jones & Co., 312 F.Supp.2d 1375, 1382 (D. Colo. 2004).

## X.  SUMMARY

The motions to dismiss (doc. 16, 17) should be granted in part, and denied in part, on timeliness grounds.  Claims for civil penalties in an SEC civil enforcement action are governed by Section 2462, which has a five year statute of limitations. Quinlan, 2010 WL 1565473, at *6; Zacharias, 569 F.3d at 471.  Any claims for civil penalties against Geswein and Krakora based on conduct occurring prior to June 2, 2004, are not actionable as time-barred under 28 U.S.C. § 2462.  The court finds

59

that the SEC cannot rely on the doctrine of fraudulent concealment to toll any untimely claims against the defendants.

However, although Section 2462's statute of limitations applies to the claims for civil penalties, it does not apply to the SEC's request for equitable relief, such as permanent injunctive relief or disgorgement.  Gabelli, 2010 WL 1253603, at *5; Power, 525 F.Supp.2d at 426-427; DiBella, 409 F.Supp.2d at 127.  Thus, to the extent that the SEC seeks to enjoin the defendants from violating or aiding and abetting the violation of the securities laws, or an order directing the defendants to disgorge profits, in order to remedy an alleged past wrong and protect the public from future harm, the five-year statute of limitations of Section 2462 does not apply.

The court finds that the amended complaint specifies statements that the SEC contends were fraudulent, identifies the speaker, states where and when the statements were made, and explains why the statements were fraudulent, thus it meets the particularity requirements of Rule 9(b).  The amended complaint should not be dismissed on the basis that the SEC does not identify specific provisions of GAAP that have been allegedly violated.  Collins & Aikman, 524 F.Supp.2d at 495.

The court finds that the amended complaint, although poorly drafted, pleads sufficient factual content to allow the court to draw the reasonable inference that Geswein and Krakora may be liable for the misconduct alleged in the first and second counts.  Specifically, the SEC has sufficiently alleged scienter as to Geswein

and Krakora.  Thus, the first and second claims should not be dismissed on this basis.

The court finds that the SEC has sufficiently alleged violations of Section 13(b)(5) and Rule 13b2-1 against Geswein and Krakora.  The court also finds that the SEC has sufficiently alleged violations of Rule 13b2-2 against Geswein and Krakora.  Thus, the third and fourth claims should not be dismissed on this basis.

The court finds that the SEC has authority to bring an enforcement action under Rule 13a-14, and has sufficiently alleged violations of Rule 13a-14 against Geswein and Krakora.  Thus, the fifth claim should not be dismissed on that basis.

Because the court finds the amended complaint should not be dismissed on the basis that the SEC does not identify specific provisions of GAAP.  Collins & Aikman, 524 F.Supp.2d at 495, the sixth and seventh claims should not be dismissed on that basis.

The eighth claim should not be dismissed on the basis that the SEC has failed to state the elements of the claim.  As to the constitutional arguments against Section 304, the court does not find the statute unconstitutional on its face.  The motion to dismiss should be denied as to that ground.  The motion to dismiss should be denied, without prejudice to renew, on the argument that Section 304 is unconstitutional as applied, pending the factual development of the case.

<u>RECOMMENDATION</u>

It is recommended that the motions to dismiss (doc. 16, 17) should be granted in part, and denied in part.


Dated:  <u>Aug. 5, 2011</u>             <u>/s/ Kenneth S. McHargh</u>
                                 Kenneth S. McHargh
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).