UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) | CASE NO. 5:10CV1235 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) | OPINION AND ORDER |
| GREGORY GESWEIN, et al., | ) ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

The Court issues this Opinion and Order in furtherance of its March 28, 2013 Order (ECF DKT #104), denying Defendants' Motions (ECF DKT #79, #80, & #81) to Dismiss the Second Amended Complaint, and upon consideration of *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. —, 131 S.Ct. 2296 (2011) and *Gabelli v. Securities and Exchange Commission*, 568 U.S. —, 133 S.Ct. 1216 (2013).  After conducting a thorough analysis, and based upon the following reasoning, the Court denies Defendants' supplemental Motions (ECF DKT #105, #107 & #110) to Dismiss and adheres to its original ruling. Accordingly, Defendants shall file their Answers in compliance with Fed.R.Civ.P. 12(a)(4).

## I. BACKGROUND

The United States Securities and Exchange Commission ("SEC") filed this action against Gregory Geswein, Kevin Krakora and Sandra Miller on June 1, 2010; and filed its First Amended Complaint, as a matter of course, on June 29, 2010.  Following the Court's ruling on Motions to Dismiss filed by all three Defendants, the SEC filed its Second Amended Complaint (ECF DKT #77) on February 24, 2012.

Geswein was the Chief Financial Officer ("CFO") of Diebold, Inc. ("Diebold") from 2000 to 2005, and its principal accounting officer from 2000 to 2002.  Krakora was Diebold's Controller from 2001 through 2005, and the company's CFO from 2005 through April 2009.  Krakora was Diebold's principal accounting officer from 2003 to 2006.  When Krakora was Controller, he reported directly to Geswein.  Krakora stepped down as CFO in 2009, but remains an employee of Diebold.  Miller is a certified public accountant and served as Director of Corporate Accounting for Diebold from 2002 to 2006.

The Second Amended Complaint, comprised of nine claims and 112 paragraphs of facts, alleges that Defendants engaged in improper and, in many instances, fraudulent accounting practices during the period of 2002 to 2007, which significantly inflated Diebold's reported earnings as set forth in periodic securities filings and in information disseminated to investors and the public.

The First Count alleges violations of the Securities Act, Section 17(a), 15 U.S.C § 77q(a).  The Second Count alleges violations of the Exchange Act, Section 10b [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].  The Third Count alleges Defendants aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule

10b-5 thereunder [17 C.F.R. § 240.10b-5].  The Fourth Count alleges violations of the Exchange Act, Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. §§ 240.13b2-1].  The Fifth Count alleges violations of Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2] as to Geswein and Krakora only.  The Sixth Count alleges violations of Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14] as to Geswein and Krakora only.  The Seventh Count alleges Defendants aided and abetted Diebold's violations of the Exchange Act, Section 13(a) [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].  The Eighth Count alleges Defendants aided and abetted Diebold's violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].  The Ninth Count alleges Geswein and Krakora failed to make the required reimbursement in violation of Section 304 of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243].

In its Prayer for Relief, the SEC seeks an order permanently enjoining all Defendants from violating the alleged securities laws and rules; requiring each Defendant to disgorge ill-gotten gains, with prejudgment interest, including, but not limited to, salaries, bonuses and other benefits wrongfully obtained as a result of fraudulent conduct; imposing civil monetary penalties against each Defendant pursuant to Securities Act, Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act, Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; prohibiting Geswein and Krakora from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act, Section 12 [15U.S.C. § 78l], or that is required to file reports pursuant to Exchange Act, Section 15(d) [15 U.S.C. § 78o(d)]; and ordering Geswein and Krakora to reimburse Diebold for bonuses and other incentive-based and equity-based

compensation received, pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243].

Geswein moved for dismissal of portions of the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). (ECF DKT #79). Miller moved for dismissal of the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b). (ECF DKT #80). Krakora moved for dismissal of the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). (ECF DKT #81). The Court denied all three Motions (with the exception of the SEC's concession as to the Section 17(a)(2) claim against Defendant Miller), in a brief Memorandum Order on March 28, 2013. (ECF DKT #104). At this time, the Court provides its full Opinion and Order, including consideration of the *Janus* and *Gabelli* decisions.

## II. LAW AND ANALYSIS

**Civil Rule 12(b)(6) Standard**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S.Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

**The *Janus* Decision**

In *Janus*, a class of stockholders in Janus Capital Group, Inc.("JCG"), filed a private-action Complaint, under SEC Rule 10b-5, which forbids "any person ... [t]o make any untrue statement of a material fact" in connection with the purchase or sale of securities. The Complaint alleged that JCG and its wholly-owned subsidiary, Janus Capital Management LLC ("JCM"), made false statements in mutual fund prospectuses filed by Janus Investment Fund; and that those statements affected the price of JCG's stock. The United States Supreme Court held: "Because the false statements included in the prospectuses were made by Janus Investment Fund, not by JCM, JCM and JCG cannot be held liable in a private action under Rule 10b-5." *Janus*, 564 U.S. —, 131 S.Ct. at 2297. Most particularly, the *Janus* Court

opined:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by — and only by — the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit — or blame — for what is ultimately said. *Id*. at 2302.

### **Defendant Geswein's Motion**

Geswein moves to dismiss portions of the Second Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6). He argues that the claims under § 10b of the Securities Exchange Act, Rule 10b-5 and § 17(a) of the Securities Exchange Act should be dismissed because he was not the "maker" of the allegedly false statements; that scheme liability "does not attach where the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission;" and that the SEC failed to allege the requisite scienter for aiding and abetting Diebold's, Krakora's and/or Miller's securities law violations.

The Court disagrees. Whether or not Geswein possessed "ultimate authority" over the allegedly false statements, their content, or how they were communicated; whether Geswein is the "maker" because he signed Diebold documents or signed Sarbanes-Oxley certifications; and the extent of Geswein's involvement in the preparation of press releases, all require fact-intensive discovery. Moreover, as quoted above, *Janus* analyzes the meaning of "make" or "maker" in the context of Rule 10b-5. 131 S.Ct at 2302. The Court will not presume to extend *Janus* to violations of the Securities Act Section 17(a), as alleged against Geswein in

the Second Amended Complaint's First Claim for Relief.

As for the scheme liability allegations, the Court previously found, with respect to Co-Defendants, that the facts, set forth in the SEC's First Amended Complaint, demonstrated strong circumstantial evidence of conscious misbehavior, described inherently deceptive acts, and made it facially plausible for the Court to draw the inference of Defendants' scheme liability misconduct. (ECF DKT #36). The Court now determines that the factual allegations put forth against Geswein, in the Second Amended Complaint (ECF DKT #77), are equally sufficient to survive dismissal.

In the First and Second Claims For Relief, the SEC alleges "inherently deceptive acts" that go beyond Geswein's misrepresentations or omissions, such as: (1) use of improper revenue "opportunities," knowing or recklessly not knowing it would cause Diebold to report materially false financial results; (2) improperly instructing Diebold employees to manufacture products before customers' requested delivery dates, in order to inflate Diebold's revenues; (3) directing accounting personnel to make false journal entries to inflate earnings or revenues; and (4) directing the write-up value of used inventory, without legitimate accounting basis, resulting in false financials. (ECF DKT #77, ¶ 120).

Upon due consideration, the Court concludes that the allegations of the Second Amended Complaint state scheme liability claims against Defendant Geswein that are plausible on their face.

Geswein's third argument for dismissal is that the SEC's Third Claim for Relief, alleging he aided and abetted violations of Section 10(b) pursuant to Section 20(e) of the Exchange Act, should be dismissed for failing to allege that Geswein possessed the requisite

scienter.

Section 20(e) of the Exchange Act (15 U.S.C. § 78t(e)) provides that any person who "knowingly or recklessly provides substantial assistance" to another person's violation of the Exchange Act shall be liable to the same extent as the person to whom such assistance is provided. Furthermore, both the SEC and Geswein set forth the same elements of aiding and abetting a securities law violation: (1) a separate party committed a primary violation of the Exchange Act; (2) the accused aider and abettor had **general awareness** that his role was part of an overall activity that was improper; and (3) the accused aider and abettor knowingly and substantially assisted the violation of the securities law. *SEC v. Washington County Utility Dist.*, 676 F.2d 218, 224 (6th Cir.1982) (*quoting SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974)). However, that is as far as the SEC's and Geswein's agreement goes. The parties' interpretations of a valid aiding and abetting claim now diverge. Geswein contends that, to allege the required level of scienter, the SEC must plead that the accused aider and abettor possessed *actual* knowledge of the primary violation; and he cites to *SEC v. Espuelas*, 579 F.Supp.2d 461 (S.D.N.Y.2008) and other New York decisions.

The Court is not persuaded by Geswein's argument. Rather, the Court concurs with the SEC and its references to decisions within the Sixth Circuit, supporting the Second Amended Complaint's allegations that Geswein "knew or was reckless in not knowing" about the primary securities violation. The cited decisions instruct that the element of "general awareness" encompasses both knowledge and reckless failure to know.

For instance, in the *Washington County Utility* case, *supra*, the Sixth Circuit analyzed a defendant's conduct, and stated: "In determining whether [the alleged aider and abettor]

had a general awareness that the activity is improper, 'the surrounding circumstances and expectations of the parties are critical.'" 676 F.2d at 226. Thus, the *Washington County Utility* analysis allows for a scenario in which an accused aider and abettor should have been cognizant of securities improprieties because of the context or the reactions of others.

Moreover, as noted by another Sixth Circuit tribunal, "the requisite scienter may also be established by showing that the defendant acted with recklessness – highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *SEC v. George*, 426 F.3d 786, 792 (6th Cir.2005) (*quoting Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir.1979)).

Furthermore, an Eastern District of Michigan court addressed the jury with the following definitions and explanations:

> As to the second element of the claim for aiding and abetting, general awareness of wrongdoing means knowledge of wrongdoing. ... Knowledge of the wrongdoing may be satisfied by proof of reckless conduct. ... The SEC does not have to show that an aider and abetter knew that he was participating in or contributing to a securities law violation. However, the SEC must show that a defendant at least had a general awareness that his role was part of an overall activity that was improper. ... To act "knowingly" in this context includes either knowing that the actions are wrongful or being reckless in not knowing.

*SEC v. Battenberg*, No. 06-14891, 2011 WL 3472619, at **6-7 (E.D.Mich. Aug.9, 2011).

This Court concludes, therefore, that putting aside contrary interpretations from other jurisdictions, the scienter allegations in the Second Amended Complaint, couched in the disjunctive form of "knew or was reckless in not knowing," comport with the Sixth Circuit's required mental state for aiding and abetting violations of Section 10(b) and Rule 10b-5 of the Exchange Act. Geswein's Motion to Dismiss the Third Claim of the Second Amended Complaint for insufficient scienter is, thus, denied.

**Defendant Miller's Motion**

Miller moves for dismissal of the Second Amended Complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).  She argues that the SEC failed to include more particularized allegations against her, despite being granted the opportunity following the Court's partial dismissal of the First Amended Complaint.  (9/29/11 Order, ECF DKT #63).  She also contends that the SEC has failed to allege a valid scheme liability claim against her; and that the SEC's claims, for aiding and abetting violations of the federal securities laws, fail because they inadequately plead scienter.

The Court finds that Miller's Motion to Dismiss, like Geswein's, must be denied.  The Court need not examine the application of the *Janus* decision because the SEC does not allege that Miller is a "maker."  The SEC "does not allege that Miller herself signed any of the numerous materially false and misleading annual, quarterly and other reports that were ultimately filed with the SEC."  (ECF DKT #87 at 8).  In addition, the SEC does not oppose dismissal of the portion of its First Claim to the extent it alleges that Miller violated Section 17(a)(2) of the Securities Act.

The Court also already found that the scheme liability claims alleged against Defendant Miller are sufficient to pass Fed.R.Civ.P. 12(b)(6) muster.  (ECF DKT #36; ECF DKT #62; and this Opinion, *supra*).

Similarly, for the reasons stated with regard to the aiding and abetting claims against Geswein, Miller's request to dismiss those claims against her, for failure to sufficiently allege scienter, is denied.

**Defendant Krakora's Motion**

Krakora, Diebold's one-time corporate controller and CFO, moves under Fed.R.Civ.P. 12(b)(6) for dismissal of the Second Claim for scheme liability, brought pursuant to Rule 10b-5(a) and (c); and for dismissal of the Third Claim for Relief, sounding in aiding and abetting securities violations. As to the latter, Krakora, like his Co-Defendants, asserts that the Second Amended Complaint does not adequately plead the requisite scienter, which, he argues, is actual knowledge. Krakora also contends that, pursuant to the *Janus* case, he cannot be held liable for statements made by Diebold for which he did not have "ultimate authority;" and that his signature on come of Diebold's filings and certifications does not mean he is the "maker."

For the following reasons, the Court denies Krakora's Motion to Dismiss. As the Court has previously stated, the scheme liability allegations asserted against Krakora and his Co-Defendants, in the Second Amended Complaint, are sufficient to render the claim plausible under the *Twombly-Iqbal* analysis. In the First and Second Claims for Relief, the SEC alleges "inherently deceptive acts" that go beyond Krakora's misrepresentations or omissions, such as: (1) use of improper revenue "opportunities," knowing or recklessly not knowing it would cause Diebold to report materially false financial results; (2) improperly instructing Diebold employees to manufacture products before customers' requested delivery dates, in order to inflate Diebold's revenues; (3) directing accounting personnel to make false journal entries to inflate earnings or revenues; and (4) directing the write-up value of used inventory, without legitimate accounting basis, resulting in false financials. (ECF DKT #77, ¶ 120).

Thus, the Court concludes that the allegations of the Second Amended Complaint state scheme liability claims against Defendant Krakora that are plausible on their face.

Furthermore, the allegations in the aiding and abetting count (Third Claim for Relief), that Krakora **knew or was reckless in not knowing** his role was part of improper conduct under federal securities law, sufficiently show scienter as defined in the Sixth Circuit. (*Washington County Utility*, and other cases cited *supra*).

Defendant Krakora insists that, pursuant to the holding in *Janus*, only Diebold can be the "ultimate authority" or "maker" of statements in SEC filings and press releases. However, the Court finds that whether or not Krakora possessed "ultimate authority" over allegedly false statements, their content, or how they were communicated; whether Krakora is the "maker" because he signed Diebold documents or signed Sarbanes-Oxley certifications; and the extent of Krakora's involvement in the preparation of press releases, all require fact-intensive discovery. Upon consideration of the *Janus* case, the Court is satisfied that the First and Second Claims for Relief in the Second Amended Complaint survive dismissal.

With respect to all three Defendants, and their arguments under *Janus* or otherwise, calling for dismissal of the Second Amended Complaint, the Court denies their Motions; and finds that the Second Amended Complaint contains "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the SEC's claims against Geswein, Krakora and Miller. *SEC v. Das*, No. 8:10CV102, 2010 WL 4615336 at *5 (D.Neb. Nov. 4, 2010) (*quoting Twombly*, 550 U.S. at 556).

**The *Gabelli* Decision**

The SEC alleged that Marc J. Gabelli and Bruce Alpert aided and abetted investment fraud from 1999 until 2002; and, in 2008, brought suit against them for civil penalties.

Gabelli and Alpert moved to dismiss, in part arguing that the civil penalty claim was untimely per the statute of limitations in 28 U.S.C. § 2462.

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or property is found within the United States in order that proper service may be made thereon. *Id*.

The District Court agreed and dismissed the civil penalty claim as time-barred. However, the Second Circuit reversed, accepting the SEC's position that, because the violations sounded in fraud, the "discovery rule" applied; and the statute of limitations did not begin to run until the SEC discovered, or reasonably could have discovered, the fraud. The Supreme Court, by Chief Justice Roberts, reversed and held that the discovery rule does not apply: "But we have never applied the discovery rule in this context, where the plaintiff is not a defrauded victim seeking recompense, but is instead the Government bringing an enforcement action for civil penalties." *Gabelli*, 568 U.S. —, 133 S.Ct. at 1221. The Supreme Court concluded:

> As we held long ago, the cases in which 'a statute of limitation may be suspended by causes not mentioned in the statute itself ... are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it.' *Amy v. Watertown* (No. 2), 130 U.S. 320, 324, 9 S.Ct. 537, 32 L.Ed. 953 (1889) (internal quotation marks omitted). Given the lack of textual, historical, or equitable reasons to graft a discovery rule onto the statue of limitations of § 2462, we decline to do so.

*Id*. at 1224.

**Defendants' Motions to Dismiss Based on *Gabelli***

Defendants Geswein, Miller and Krakora urge the Court to dismiss the SEC's Second Amended Complaint in light of the *Gabelli* decision. They contend that 28 U.S.C. § 2462, as

-13-

interpreted by the Supreme Court, is a statute of repose and not a statute of limitations. As such, Defendants' argument continues, the five-year period to bring suit for civil penalties, as well as for injunctive relief and disgorgement, runs from the date the alleged securities law violation occurred. Also, Defendants maintain that, by finding the discovery rule inapplicable, the Supreme Court rejected, by implication, tolling based upon the continuing violations doctrine and the fraudulent concealment doctrine. A statute of repose, as Defendants see it, is not subject to tolling on any equitable basis nor due to any tolling agreements such as were executed by Geswein, Miller and Krakora. (ECF DKT #77, ¶ 109). Therefore, Defendants insist that the SEC's claims for relief, predicated on conduct occurring prior to June 2, 2005 (five years before the filing of the original Complaint) are time-barred.

After a careful reading of *Gabelli*, and upon consideration of Defendants' thoughtful arguments, the Court refuses to read more into the Supreme Court's decision than it says on its face. Chief Justice Roberts repeatedly refers to 28 U.S.C. § 2462 as a statute of limitations; and this Court will not declare 28 U.S.C. § 2462 a statute of repose. The Court finds that *Gabelli* announces <u>only</u> the narrow holding that the discovery rule is inapplicable to actions for civil penalties brought by the SEC.

The SEC concedes that it cannot rely on the discovery rule to preserve its claims against Defendants for civil penalties. However, the SEC still relies on the tolling of the limitations period provided by the continuing violations doctrine and the fraudulent concealment doctrine. In an earlier Order, this Court determined that equitable tolling, encompassing the fraudulent concealment doctrine and the continuing violations doctrine, operates in favor of the SEC to extend the limitations period and to prevent dismissal at this

stage. (9/29/11 Order, ECF DKT #63 at 5). Additionally, the Supreme Court, in *Gabelli*, did not discuss these doctrines because the SEC abandoned reliance on the fraudulent concealment doctrine and other equitable tolling principles in the lower court. *Gabelli, id.* at fn. 2. Thus, this Court will not presume to guess what the Supreme Court would hold if those issues were before it for consideration.

Again, in its earlier Order, this Court further determined, that "to the extent that the SEC seeks to enjoin [Defendants] from violating or aiding and abetting the violation of securities laws, or an order directing them to disgorge profits to remedy an alleged past wrong and protect the public from future harm, Section 2462 does not apply." (9/29/11 Order, ECF DKT #63 at 5). Since those claims were not before the Supreme Court in *Gabelli* ("The SEC also sought injunctive relief and disgorgement, claims the District Court found timely on the ground that they were not subject to § 2462. Those issues are not before us." fn. 1), this Court has no reason to reconsider its own decision in that regard.

In sum, the Court is not persuaded by Defendants' interpretation of *Gabelli*; does not find that 28 U.S.C. § 2462 is a statute of repose; will not dismiss the SEC's claims as time-barred; and denies all three Defendants' Motions to Dismiss the Second Amended Complaint. (ECF DKT #105, #107, & #110).

### III. CONCLUSION

Based upon the foregoing analysis of the *Janus* and *Gabelli* decisions, and upon consideration of the briefs and arguments of the parties, the Court denies Defendants' supplemental Motions (ECF DKT #105, #107 & #110) to Dismiss, and adheres to its previous ruling, denying Defendants' Motions (ECF DKT #79, #80 & #81) to Dismiss the Second

Amended Complaint. Accordingly, Defendants shall file their Answers in compliance with Fed.R.Civ.P. 12(a)(4).

    **IT IS SO ORDERED.**

                                     **s/ Christopher A. Boyko**
                                     **CHRISTOPHER A. BOYKO**
                                     **United States District Judge**

**Dated: March 5, 2014**